UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,

Plaintiff,

v. C.A.No. 06-69T

W. MICHAEL SULLIVAN, in his official capacity only as Director of the Rhode Island Department of Environmental Management,

Defendant.

**MOTION OF CONSERVATION LAW FOUNDATION, SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, AND ENVIRONMENTAL DEFENSE TO INTERVENE AS PARTY DEFENDANTS**

NOW COME the Conservation Law Foundation, Sierra Club, Natural Resources Defense Council, and Environmental Defense ("Applicants"), and hereby move to intervene as party defendants in the above captioned cases pursuant to Rule 24 of the Federal Rules of Civil Procedure, in support of the Defendant W. Michael Sullivan ("Defendant"). In support thereof Applicants state:

1. Applicants refer to and incorporate herein the Memorandum of Law in Support of this Motion attached hereto.

2. Applicants are national and regional based nonprofit advocacy organizations that have been significantly involved on the national and state levels in the statutory and regulatory processes leading to the implementation of these greenhouse gas emissions standards ("GHG emission standards"). Each of the Applicants will bring significant expertise on the various issues in this action.

3. In addition, each of the Applicants has worked on behalf of their members to promote the adoption of the regulations promulgated by the Rhode Island Department of Environmental Management ("DEM") under the specific authority of § 177 of the Clean Air Act, 42 U.S.C. § 7507, to limit motor vehicle emissions of greenhouse gasses (the "DEM regulations") in Rhode Island, as well as similar regulations in other states.

4. Conservation Law Foundation ("CLF") is a non-profit, member-driven environmental advocacy organization dedicated to protecting the people, environment and communities of New England. One of CLF's core program areas and organizational goals is to reduce emission of pollutants that contribute to regional air pollution and global warming. CLF has advocated, through its "Clean Energy and Climate Change" project, for adoption of California's GHG emission standards challenged here as one of the best options available to reduce greenhouse gas emissions in New England. CLF has more than 350 members in Rhode Island and thousands of members across the Northeast who are users of the natural resources directly impacted by the diverse effects of global warming.

5. Environmental Defense ("ED") has over 400,000 members nationally, with more than 1,170 active members in Rhode Island, and specializes in the development of innovative, scientifically sound, market-based solutions to environmental problems. Through its Climate and Air Program, ED works extensively on the international, national and state levels to address the causes and effects of global warming. Environmental Defense supported the adoption of automotive greenhouse gas emissions standards in California as part of its State Climate Action Project. When Rhode Island initiated state rule-making processes to adopt this California program, Environmental

Defense provided detailed comments to the Rhode Island DEM in favor of the proposed rule.

6. Sierra Club is a national nonprofit environmental organization with approximately 700,000 members nationwide, including over 3,000 members in Rhode Island. One of Sierra Club's major programs is its national Global Warming and Energy Campaign to promote solutions to global warming using current and cutting-edge technologies, and securing promulgation of the GHG emission standards was among the top priorities of this Campaign.

7. Natural Resources Defense Council ("NRDC") has approximately 551,650 members nationally, with 2,340 members in Rhode Island, and uses law, science, and the support of its members and the public to ensure a safe and healthy environment for all living things. One of NRDC's top priorities is to reduce air pollution that endangers public health and welfare, including the air pollution that is causing global warming.

**Intervention As Of Right Under Rule 24(b)**

8. Applicants satisfy the four-part test for intervention as a matter of right under Rule 24(a).

9. Public interest organizations such as Applicants have a sufficient interest to intervene as of right when, as here, they were directly involved in the enactment of a challenged measure, or in the administrative proceedings in which it arose. Applicants further have a strong interest in the DEM regulations because of potential health impacts to their members, and their use and enjoyment of the environmental resources threatened by global warming that the program aims to protect.

10. The disposition of this case therefore has the clear potential to impair Applicants' and their members' interests. Applicants have no other means of guarding against impairment of their interests short of intervention in this suit.

11. In addition, Applicants' interests will not be adequately represented by the Defendant. Applicants have a strong interest in protecting resources on the national level, impacts with which the Applicants and their members--but not the State Defendant--are vitally concerned. Applicants can also bring additional expertise on a number of issues that may arise in the case, and will likely offer different perspectives on legal and factual issues.

12. Finally, Applicants are requesting to intervene at the earliest possible stage of this litigation. The proposed intervention is timely, will not prejudice the other parties, and will not cause any delay in the proceedings.

**Permissive Intervention Under Rule 24(b)**

13. Applicants meet the substantially less burdensome statutory prerequisites for permissive intervention under Rule 24(b). As described above, this application will not prejudice the rights of the existing parties and Applicants will bring significant expertise and interests important to the Court's resolution of plaintiff's challenges to the DEM regulations.

14. Jurisdiction over the present case is based on the federal questions raised by the plaintiff's complaint, and this Court has supplemental jurisdiction over Applicants pursuant to 28 U.S.C. § 1367(a).

15. Applicants seek to intervene as party defendants, to assert all defenses and evidence in support thereof as necessary to defend against all claims asserted by Plaintiff in this action. Although normally a responsive pleading would be attached to the motion to intervene, such a responsive pleading would be premature in this case as no answer has

yet been filed by the Defendant. Applicants seek leave to file an Answer and/or other responsive pleading pursuant to Rule 24(c) when the Defendant is required to do so.

16. The Defendant consents to Applicants' request to intervene in this action. Plaintiff has not yet responded to Applicants' inquiry as to whether they will oppose the motion to intervene.

Wherefore, the Applicants respectfully request that the Court:

A. Grant Applicants' Motion for intervention as of right as a party defendant, or

B. Grant, in the alternative, Applicants' Motion for permissive intervention as a party defendant, and

C. Order such other relief as necessary and just.

Respectfully submitted,

Cynthia Giles (# 5868)
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903-2221
(401) 351-1102
cgiles@clf.org

Counsel for Applicants Conservation Law Foundation, Sierra Club, Natural Resources Defense Council, and Environmental Defense

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS, Plaintiff, | ) | |
| v. | ) | C.A. No. 06-69T |
| W. MICHAEL SULLIVAN, in his official capacity only as Director of the Rhode Island Department of Environmental Management, Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF CONSERVATION LAW FOUNDATION, SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, AND ENVIRONMENTAL DEFENSE TO INTERVENE AS PARTY DEFENDANTS**

This case involves a nationally significant challenge to provisions in the federal Clean Air Act that authorize California to regulate pollution from motor vehicles and that authorize states like Rhode Island to adopt California's regulations as their own. See 42 U.S.C. §§ 7543, 7507. In 2005, Rhode Island's Department of Environmental Management ("DEM") utilized this clear grant of authority to adopt California's new regulations limiting motor vehicle emissions of the gasses that contribute to global warming and climate change. Plaintiff nonetheless challenges DEM's adoption of these regulations on various grounds, including preemption, commerce clause, and antitrust claims.

The Conservation Law Foundation, Sierra Club, Natural Resources Defense Council and Environmental Defense ("Applicants") seek to defend the DEM regulations by intervening as of right, Fed. R. Civ. P. 24(a), or, alternately, with the Court's permission. Fed. R. Civ. P. 24(b). Applicants are national and regional nonprofit advocacy organizations that have been

significantly involved in the statutory and regulatory processes leading to the adoption and promulgation of these greenhouse gas ("GHG") emission regulations in California, Rhode Island and nine other states that have adopted the rules, which represent about one-third of the U.S. market for new motor vehicles. Each of the Applicants has significant expertise on the issues presented, and is working on behalf of their members to address the problem of global warming and promote the passage of similar regulations in other states.

Applicants' request to intervene as party defendants has been granted in a Vermont case raising these very same claims. Green Mountain Chrysler-Plymouth-Dodge-Jeep v. Torti, No. 2:05-cv-00302-wks (D. Vt. Memorandum Opinion and Order dated May 3, 2006). Applicants Sierra Club, Natural Resources Defense Council and Environmental Defense are also defendant-intervenors in virtually identical litigation challenging California's underlying authority to adopt these GHG regulations. Central Valley Chrysler-Jeep, Inc. v. Witherspoon, No. 1:04-cv-06663-REC-LJO (E.D. Calif. filed Dec. 7, 2004).

## I. APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

To intervene as a matter of right under Rule 24(a) an Applicant must: (1) timely file an application; (2) show an interest in the action; (3) demonstrate that Applicant's ability to protect its interest may be impaired by the disposition of the action; and (4) show that the interest is not protected adequately by parties to the action. Public Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). Although Applicants must meet each of these four factors, where doubts exist, the factors should be liberally construed in favor of intervention. See, e.g., Am. Renovation & Constr. Co. v. U.S., 65 Fed. Cl. 254, 257 (Fed. Cl. 2005) (collecting cases).

As Applicants are requesting to intervene at the earliest possible stage, the Motion to

Intervene is timely.[1] Applicants further satisfy the remaining requirements of the four-part test.

### A. Applicants Have A Significant Interest In This Action.

The second prong of Rule 24(a)(2) requires that an intervenor have an interest related "to the property or transaction which is the subject of the action." Intervenors need not show a specific legal or equitable interest, Amoco Oil Co. v. Dingwell, 690 F. Supp. 78, 81 (D. Me. 1988), so long as their claims "'bear a sufficiently close relationship to the dispute between the original litigants' and 'the interest [is] direct, not contingent.'" Verizon New England v. Maine Public Utilities Comm'n, 229 F.R.D. 335, 337 (D. Me. 2005), quoting Conservation Law Found., Inc. v. Mosbacher, 966 F.2d 39, 42 (1st Cir.1992). Applicants have a vital and direct interest in both the DEM regulations and in the environmental resources that the regulations aim to protect.

#### 1. Applicants Were Directly Involved in the Enactment of the Regulatory Program at Issue in this Case.

Prior involvement in legislative or administrative proceedings "may well form a sufficient predicate to intervene as of right." Patch, 135 F.3d at 206. Thus, public interest groups that "took an active role" in drafting a law have an "interest in the continuing constitutional viability of that law." Herdman v. Town of Angelica, 163 F.R.D. 180, 187 (W.D.N.Y. 1995). Accord Tutein v. Daley, 43 F.Supp. 2d 113, 127 (D. Me. 1999) (environmental group's role in enacting statute, participation in administrative proceedings and ongoing advocacy programs met rule 24(a) interest test); In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991) (environmental group with party status in administrative permitting proceeding allowed to intervene in challenge to the constitutionality of governing state regulation).

Here, Applicants have a clear administrative-proceeding interest that is directly

[1] The complaint was filed on Feb. 13, 2006, Defendant has not filed an answer, one motion is pending, and no orders have been issued. Thus, the proposed intervention will not prejudice the other parties; nor will it cause any delay in the proceedings. See, e.g., Culbreadth v. Dukakis, 630 F.2d 15, 20-25 (1st Cir. 1980); 7C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1916 n.13 (2d ed. 1986).

threatened by Plaintiff's action. Applicants' staff and members engaged in extensive advocacy efforts to secure adoption of the DEM regulations, including testifying at administrative hearings that preceded the DEM regulations, submission of detailed comments on the regulations, meeting with the Governor's staff to gain his support of the rules, participating in the state-convened stakeholders process that recommended adoption of the regulations, and educating the public about the importance of the law and regulations. Applicants also participated extensively in the passage of both the statutory and regulatory authority for California to adopt these GHG emission standards and in the administrative processes in the nine other states adopting the same regulations. Indeed, Applicants continue these efforts in many other states which have not adopted the regulations. Thus, Applicants have demonstrated a direct, significant and protectable interest in the subject matter of this action. Tutein, 43 F.Supp. at 127.

**2. Applicants' Members Use and Enjoy the Resources Protected By the DEM Regulations.**

In adopting these regulations, DEM stated that global warming and climate change will cause severe negative environmental and economic impacts in Rhode Island, including losses to the state's shoreline, fishing, tourism and boating industries, as well as its world famous beaches. DEM further concluded that the transportation sector contributes almost 40 percent of Rhode Island's greenhouse gas emissions, and that the DEM regulation was the single most effective proposal yet developed to meet Rhode Island's greenhouse gas emission reduction goals as set forth in the recent Climate Action Plan adopted by the Conference of New England Governors and Eastern Canadian Premiers.[2]

Applicants' members actively use and enjoy – for aesthetic, recreational and commercial

[2] See DEM, Office of Air Resources, Fact Sheet: In Re: Proposed Amendments to Air Pollution Control Regulation No. 37, available at http://www.dem.ri.gov/programs/benviron/air/pdf/levdec.pdf. DEM, Office of Air Resources, Climate Change and Rhode Island Fact Sheets, available at http://www.dem.ri.gov/climate/index.htm.

purposes – Rhode Island's natural and aquatic resources, including its shoreline and beaches, forests and rivers, plants and wildlife, and bays, harbors, islands and ocean. Applicants' interests in these resources are already being negatively affected by global warming, and will suffer even more if the rate of anthropogenic emissions of greenhouse gases that contribute to global warming is not slowed and ultimately reversed. Given that the DEM regulation is Rhode Island's leading strategy to reduce anthropogenic emission of greenhouse gasses – with estimated reductions 2 to 2.5 times greater than any other option in the state's current Greenhouse Gas Action Plan[3] – any effort to block the rule will significantly affect Applicants' members interests in conservation and protection of Rhode Island's natural environment. See, e.g., Mausolf v. Babbitt, 85 F.3d 1295, 1302-3 (8th Cir. 1996) (environmental group entitled to intervene as of right to insure the group's conservation interests are adequately represented). This gives Applicants a second and separate significant protectable interest in the subject matter of this action.

**B. Applicants' Interests May Be Impaired As A Result of This Litigation.**

Plaintiff's frontal attack on the constitutionality of the DEM Regulation directly threatens to undo the results of Applicants' advocacy and harm its conservation interests. These threats meet the third prong of the test for intervention of right – that Applicant's interests may be impaired by disposition of the action.

Rule 24(a)(2) does not require that the Applicants' interests be legally impaired; rather, the Court must determine "whether disposition of the action may, as a practical matter, impair or impede the Applicants' ability to protect its interest." Mosbacher, 966 F.2d at 42 (emphasis added). See also Natural Res. Defense Council v. Nuclear Regulatory Comm'n, 578 F.2d 1341,

---

[3] See DEM, Office of Air Resources, Fact Sheet: In Re: Proposed Amendments to Air Pollution Control Regulation No. 37, supra at 11.

1345 (10th Cir. 1978) ("the court is not limited to consequences of a strictly legal nature"); Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (citing Fed. R. Civ. P. 24, Advisory Committee Note to 1966 Amendments)).

There is no question that an adverse decision in this case would significantly impair Applicants' interests. A ruling that Rhode Island cannot regulate greenhouse gas emissions from motor vehicles would constitute a dramatic setback in Applicants' campaigns to fight global warming by potentially putting one of the most polluting sectors of our economy beyond the reach of state regulation. See, e.g., Mausolf, 85 F.3d at 1302-3 (allowing intervention as of right to insure the group's conservation interests are adequately represented); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir. 1983) (environmental group allowed to intervene as of right in suit challenging designation of conservation area to protect its interest in habitat protection). Moreover, Applicants' considerable investment in the process to enact the DEM regulations, including countless hours of staff and volunteer time and effort, and considerable financial resources, would be nullified. See Daggett v. Commission on Governmental Ethics and Election Practices, 172 F.3d 104, 110 (1st Cir. 1999) (federal court injunction against implementation of statute easily satisfies "practical" test of adverse effect under Rule 24(a)); c.f Patch, 136 F.3d at 206 (holding that Applicants' interests were insufficient because alleged harms to their administrative-proceeding interests were contingent.)

In short, Applicants have no other means of guarding against impairment of these interests short of intervention in each federal circuit where Plaintiffs file a challenge. See Tutein v. Daley, 43 F.Supp.2d at 128 ("[T]he adverse impact of *stare decisis* standing alone may be sufficient to satisfy the practical impairment requirement.... This is particularly true where, as

here, the case involves one of first impression in this circuit as well as a matter of federal law.") (internal citation omitted); New York Public Interest Research Group v. Regents of the Univ. of the State of New York, 516 F.2d 350, 352 (2d Cir. 1975) (the contention that Applicants may protect their interests after an adverse decision in the instant case "ignores the possible *stare decisis* effect of an adverse decision").

**C. Applicants' Interests Are Not Adequately Represented by Defendant**

Determining whether an existing party will adequately represent a party's interests requires balancing the interest, impairment and adequacy of representation components of Rule 24(a)(2) in the context of the overall litigation. Patch, 135 F.3d at 204. When a government defends the validity of a statute, there is a rebuttable presumption that it will adequately represent the interests of all citizens who support the statute. Daggett v. Comm'n on Gov'tl Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999). This is a case specific inquiry, and district courts are discouraged "from identifying only a limited number of 'cubbyholes' for inadequate representation claims." B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F. 3d 541, 546 (1st Cir 2006). The First Circuit has further explained that "[a]lthough the bar is raised higher . . . in this situation, there is danger in a mechanistic application of such language. 'Presumption' means no more in this context than calling for an adequate explanation as to why what is assumed – here, adequate representation – is not so." Maine v. U.S. Fish and Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001).

The First Circuit has described three factors to guide the adequacy of representation review by the district courts: (1) whether the interests of the present party are sufficiently similar to the proposed intervenors' interests such that the legal arguments of the latter will undoubtedly be made by the former; (2) whether the present party is willing and able to make such arguments; and (3) whether the proposed intervenors, if allowed to intervene, would add some necessary

element to the proceedings which would not be covered by the parties in the suit. Tutein v. Daley, 43 F.Supp.2d at 129 n.25, citing United Nuclear Corp. v. Cannon, 696 F.2d 141, 144 (1st Cir. 1982).

All of these factors favor the granting of intervention as of right here. First, Applicants' interests, expertise and perspective significantly differ from those of Defendant. For example, the State must base its representation on the broader interests of its citizens rather than the unique conservation values represented by Applicants. See Trbovich, 404 U.S. at 538-39 (finding intervention appropriate because government's duty to represent both broad interests of the public and narrower interests of proposed intervenor were "related, but not identical"). In the identical case pending in Vermont, the court found that the State's and Applicants' "interests may significantly differ when it comes to weighing environmental issues, industry interests and budgetary concerns in defending this lawsuit." Green Mountain Chrysler-Plymouth-Dodge-Jeep, slip op. at 13 (D. Vt. Memorandum Opinion and Order dated May 3, 2006). See, also, Mosbacher, 966 F.2d at 44 (fishermen allowed to intervene in case against the government because they may present their interests in a "more parochial light"); Sierra Club v. Espy, 18 F.3d 1202, 1208 (5th Cir. 1994) (permitting timber interests to intervene because "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry"); Mausolf, 85 F.3d at 1302-3(same). The same is true in this case, where the State must weigh conservation interests of its citizens against its interests in commerce and industry, as well as budgetary and other economic and political concerns.

Second, Applicants are prepared to make legal and factual arguments that Defendant, because of his divergent interests, may not. For example, in comments on the proposed rule Applicants argued that, because Rhode Island had already adopted California's earlier motor vehicle emission standards, it must also adopt California's GHG amendments in order to comply

with the "identicality" provisions in § 177 of the Clean Air Act. 42 U.S.C. § 7507. See Response to Comments: In Re: Proposed Amendments to Air Pollution Control Regulation No. 37, supra, at 4. DEM noted that other commenters had argued that § 177 does not require states to adopt the California regulations in their entirety and ultimately declined to take a position on the issue. Id. The difference between Applicants and Defendant's positions may be far more than a mere tactical disagreement over litigation strategy. See Maine v. U.S. Fish and Wildlife Serv., 262 F.3d at 20. Rather, it may reflect the state's unique interests and its apparent concern with raising an argument that could affect its entire emission program should the courts find that one piece, the GHG regulations, is pre-empted. See B. Fernández & Hnos., v. Kellogg USA, 440 F.3d at 547 ("'It is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy. It is sufficient for Applicants to show that, because of differences in interests, it is likely that Defendants will not advance the same arguments as Applicants.'"), quoting Southwest Ctr. for Biological Diversity, 268 F.3d at 824.

Finally, Applicants have the experience and expertise necessary to provide factual evidence and legal arguments predicated on events and proceedings occurring beyond Rhode Island's borders. Applicants are parties to virtually identical litigation in California and Vermont and can provide first-hand knowledge and expertise from these related legal proceedings that Defendant cannot. See Green Mountain Chrysler-Plymouth-Dodge-Jeep, slip op. at 12 (D. Vt. Memorandum Opinion and Order dated May 3, 2006). Plaintiff is also involved in the California and Vermont proceedings, and the State will be at a significant disadvantage without the Applicants in this case.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT APPLICANTS PERMISSIVE INTERVENTION.

The factors to be considered in allowing permissive intervention under Rule 24(b) are

whether Applicants' defense and the main action have a question of law or fact in common, whether intervention will unduly delay or prejudice the rights of the original parties, and whether Applicants will significantly contribute to the full development of factual issues and just and equitable adjudication of legal questions presented. U.S. Postal Service v. Brennan, 579 F.2d 188, 191-192 (2d Cir. 1978). See also Daggett, 172 F.3d at 112-13.

Applicants have demonstrated above numerous ways that their defense goes to the heart of the main questions in this action, that this application is timely and will not delay or prejudice any party, and that Applicants will contribute to the full development of factual and legal issues that may be presented in this case. Additionally, because Applicants are parties in virtually identical litigation by this Plaintiff in two other circuits, our presence in this case is equitable and just since it would help level what would otherwise be a very uneven playing field. See Daggett, 172 F.3d at 114 (Lynch, J. concurring) (courts should consider imbalance between parties when hearing intervention motion). Accordingly, Applicants should be granted permission to intervene under Rule 24(b)(2) if intervention as of right is denied.

Respectfully submitted,

Cynthia Giles (# 5868)
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903-2221
(401) 351-1102
cgiles@clf.org

Counsel for Applicants Conservation
Law Foundation, Sierra Club,
Natural Resources Defense Council,
Environmental Defense

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,<br><br>Plaintiff,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his official capacity only as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | C.A.No. 06-69T |

**CERTIFICATE OF SERVICE**

I, Cynthia Giles, do hereby certify that I mailed a true copy of the Motion of Conservation Law Foundation, Sierra Club, Natural Resources Defense Council, and Environmental Defense to Intervene and Memorandum in Support by first class mail, postage prepaid, on this 8th day of May, 2006, to those indicated below:

Raymond B. Ludwiszewski, Esq.
Charles H. Haake, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Mary C. Dunn, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

Tricia Jedele, Esq.
Special Assistant Attorney General
Environmental Advocate
Department of Attorney General
150 South Main Street
Providence, RI 02903

Timothy Pavilonis, Esq.
Office of Legal Counsel
Rhode Island Department of
Environmental Management
235 Promenade Street
Providence, RI 02908

Dated and signed May 8, 2006.

Cynthia Giles (# 5868)
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903-2221
(401) 351-1102
cgiles@clf.org

Counsel for Applicants Conservation Law Foundation, Sierra Club, Natural Resources Defense Council, Environmental Defense