UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **W. MICHAEL SULLIVAN, in his official capacity as Director of the Rhode Island Department of Environmental Management,** <br><br> **Defendant.** | : | **C.A. No. 06-69T** |
| **LINCOLN DODGE, INC. et al.,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **W. MICHAEL SULLIVAN, in his official Capacity as Director of the Rhode Island Department of Environmental Management,** <br><br> **Defendant.** | : | **C.A. No. 06-70T** |

**DEFENDANT'S AMENDED SURREPLY BRIEF**
**IN SUPPORT OF MOTION TO DISMISS**

By permission of the Court, Defendant, State of Rhode Island, submits this amended surreply to Dealer-Plaintiffs' expanded brief that was filed on May 31, 2006.

## I. PRELIMINARY STATEMENT

Dealer-Plaintiffs' case is not ripe and therefore, not entitled to pre-enforcement review. Specifically, Dealer-Plaintiffs have failed to present an actual case and controversy; have not raised issues fit for review; and have alleged a harm that is speculative at best. Dealer-Plaintiffs have argued that this case is a simple, federal

preemption case – involving a pure legal question, and thus entitling them to pre-enforcement review. Dealer-Plaintiffs have directed this Court to begin its review with the merits of their fuel economy standards claim – a review that is wholly irrelevant to any determination on the question of ripeness.

As an initial matter, therefore, this case must be cast in its proper light – a legal challenge to Rhode Island's authority to adopt California's vehicle emissions standards. In this light it is clear that, only one fact, is relevant to the question of ripeness – EPA has not yet decided whether to waive federal preemption under the Clean Air.

In 1967, Congress authorized California under the Clean Air Act to set separate emission standards for new cars sold in California. 42 U.S.C. § 7543(b). Ten years later, Congress further expanded the reach of California's separate auto emissions program by adding Section 177 to the Clean Air Act authorizing other states to adopt California's standards. 42 U.S.C. § 7507; see Motor & Equip. Mfrs. Ass'n v. Nichols (MEMA III), 142 F.3d 449, at 453. There are currently ten such "Section 177 states" that have adopted California's standards, accounting for almost one-third of the total U.S. car market. The Clean Air Act therefore creates two sets of standards with equal federal status – the standards adopted by California and the Section 177 States, and those adopted by EPA. See Engine Mfrs. Ass'n v. EPA, 88 F.3d 1075, at 1080. Under this federal-state partnership, California's, and thus other states', validly adopted standards have equal dignity with the federal government's own emission standards.

Dealer-Plaintiffs, nonetheless, suggesting that the merits of their claims are relevant to a determination on the ripeness question, have attempted to cast this case in the shadow of its proper light – a legal challenge to a *de facto* fuel economy standard.

Dealer-Plaintiffs argue that their case is ripe for pre-enforcement review because the question of whether Regulation 37 is preempted by the federal Environmental Policy and Conservation Act ("EPCA") is "purely legal" and, that if the question remains unanswered, they would suffer an immediate harm. Dealer-Plaintiffs suggest that this Court can answer this "purely legal" question regardless of whether EPA addresses California's waiver request under the Clean Air Act, and in doing so, it can provide them with the relief they have requested. Specifically, Dealer-Plaintiffs argue that Regulation 37 impermissibly "relates to" EPCA's fuel economy standards because the reduction of carbon dioxide emissions (one of the four regulated greenhouse gas pollutants) also may improve fuel economy. The language and legislative history of both the Clean Air Act and EPCA, however, confirm California's authority to set motor vehicle emission standards for air pollutants, and Rhode Island's authority to adopt these standards, even when those standards may have a incidental effect on fuel economy.

Because the waiver has not yet been issued, however, the only legal issue right now is: "Whether the State of Rhode Island is authorized by Congress under the Clean Air Act to adopt California's vehicle emission standards prior to an EPA decision regarding California's waiver of preemption request."

The ripeness doctrine does not allow the Court to reach Plaintiffs' question - absent a waiver of preemption decision from EPA - an event, which may never occur.

## II. ARGUMENT

### A. Dealer-Plaintiffs' Claims Do Not Satisfy the Constitutional Component of the Ripeness Inquiry.

Plaintiffs argue that the State " appears to concede Article III standing," and "does not appear to challenge the Article III standing of any of the plaintiffs to bring this action." Linc. Dodge Br. at 15. The constitutional component of the ripeness inquiry, however, is derived from Article III of the U.S. Constitution, and, "is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury-in-fact prong. Sorting out where standing begins and ripeness ends is not an easy task. Indeed, because the focus of the ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." Cf. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). The State has challenged the subject-matter jurisdiction of this Court on ripeness grounds, an argument, which assumes the Plaintiffs have not alleged injuries that are cognizable yet. Indeed, although the State does not directly challenge the Dealer-Plaintiffs' standing in its Motion to Dismiss, if the Dealer- Plaintiffs' claims are not ripe under the constitutional component of the ripeness inquiry, likewise, Dealer-Plaintiffs do not have standing at this time. Moreover, as standing is a jurisdictional matter, this Court may consider the Dealer-Plaintiffs' Article III standing *sua sponte* even absent a motion asking the Court to do so.

The "personal stake" requirement for standing requires a "fairly traceable causal connection between the claimed injury and the challenged conduct." Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 72 (1978) (quoting Arlington Heights v.

Metropolitan Housing Dev. Corp., 429 U.S. 252, 261, 97 S. Ct. 555, 561, 50 L.Ed.2d 450 (1977)). The Supreme Court has declared this to mean that the "exercise of the Court's remedial powers would redress the claimed injuries." Id at 74 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 43, 96 S.Ct. 1917,1926 (1976)). In other words, Dealer-Plaintiffs must show not only that they are championing their own rights, but also that the Court can take some action that will provide relief. Here, Dealer-Plaintiffs are not championing their own rights, but, rather, they are attempting to bootstrap the alleged standing of Manufacturer-Plaintiff to the alleged ripeness of their claims to form one aggregate plaintiff that does not exist. Moreover, even if this Court granted the Dealer-Plaintiffs the relief they seek, such relief would not redress the Manufacturer-Plaintiff's claimed injuries. As stated in the State's surrepply to Manufacturer-Plaintiff, the uncertainties Manufacturer-Plaintiff claim to be faced with are created by the California Air Resources Board ("CARB"); the ongoing litigation in California concerning the CARB regulation; and CARB's application for a preemption waiver from EPA. As Regulation 37 is a mere copy- cat of California's regulation – Rhode Island incorporated California's standards by reference – Rhode Island simply would be looking for cars that were certified by the State of California to be sold in the Rhode Island markets. Indeed, Manufacturer-Plaintiff seems to acknowledge this point in advancing its "uncertainty" argument, by referring entirely to the actions of CARB – actions, which cannot be addressed or resolved by this Court. [1] AIAM Br. at 13. Even if Regulation 37 were enforceable, at some point in the future, therefore, it is aimed at the conduct of the

[1] In at least one suit for declaratory judgment, relief was denied with a suggestion that the plaintiff intervene in a pending action elsewhere. Abbott Laboratories v. Gardner, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519. See Green Mountain Chrysler Plymouth Dodge Jeep et al. v. Torti, Case No. 2:05-cv-302 (D.Vt.).

Manufacturer-Plaintiff, not that of the Dealer-Plaintiffs. Likewise, while Regulation 37 applies to the conduct of the Manufacturer-Plaintiff and not Dealer-Plaintiffs, Dealer-Plaintiffs are alleging an immediate harm, which is derived from a prospective, and tentative harm to the Manufacturer-Plaintiff, which is contingent upon the occurrence of a particular event – EPA's decision on California' waiver application.

Therefore, neither party has standing at this time. Neither party's claims satisfy the constitutional component of the ripeness inquiry. The parties and claims cannot be melded together in a joint effort to create standing or ripeness.

**B. Dealer-Plaintiffs Do Not Satisfy the Prudential Component of the Ripeness Inquiry**

Under the prudential component of the ripeness inquiry, the courts have traditionally asked whether the issues are fit for judicial review, specifically examining the need for further factual development. See Ernst & Young v. Depositors Economic Protection Corporation, 862 F.Supp. 709, 714 (D.R.I. 1994) (citing W.R. Grace & Co. v. United States Evtl. Protection Agency, 959 F.2d 360, 364 (1st Cir. 1992)). If the factual development is sufficient for a decision on the merits, the courts next look to the issue of 'hardship,' specifically probing whether the plaintiff is suffering direct and immediate harm, necessitating a decision on the merits. Id.

**1. Dealer-Plaintiffs' Claims Are Not Fit For Judicial Review**

Under the fitness prong of the ripeness inquiry, the factual development is not sufficient for a decision on the merits and cannot be aided by the discovery process. One essential fact is not known. EPA has not made a decision on California's waiver request. If EPA denies the waiver request, Rhode Island cannot enforce Regulation 37 and the prospective harm alleged by Dealer-Plaintiffs will be a non-event. The First Circuit has

made clear that this is "the most important consideration in determining the ripeness of a claim," – "uncertain and contingent events that may not occur as anticipated, or may not occur at all." See Ernst & Young, id, (citing Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990)). Dealer-Plaintiffs, however, continue to ask this Court to ignore the central "uncertain and contingent event" – the lack of a waiver decision under the Clean Air Act, shifting the focus, instead, to its subsidiary EPCA claim, and asking the Court to conduct pre-enforcement review.

### 2. Dealer-Plaintiffs Are Not Entitled to Pre-Enforcement Review Under the Hardship Prong of the Ripeness Inquiry

In determining whether pre-enforcement review is warranted in the context of an action seeking declaratory and injunctive relief, the reviewing court must ask whether the "promulgation of the challenged regulations presented plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violations." Reno v. Catholic Social Services, Inc. 509 U.S. 43, 57, 113 S.Ct. 2485, 2495 (1993) (quoting Abbott Labs, 387 U.S. at 148-149, 87 S.Ct. at 1515-1516. This is essentially the hardship prong of the ripeness test. In order for Dealer-Plaintiffs "to successfully assert jurisdiction, and seek a judicial determination of the validity of a [regulation], it must show that it has sustained or is immediately in danger of sustaining a direct injury as a result of the application of the [regulation]" Ernst & Young, 862 F.Supp. at 715 (citing Laird v. Tatum, 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972)). The United States Supreme Court recognized in Reno, however, that the hardship prong would not be satisfied in every case where the Plaintiff is seeking pre-enforcement review. By way of example, the Court pointed to its earlier decision in

Toilet Goods Assn., Inc. v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) wherein it held:

> [A] challenge to another regulation, the impact of which could not 'be said to be felt immediately by those subject to it in conducting their day-to-day affairs,' would not be ripe before the regulation's application to the plaintiffs in some more acute fashion, since 'no irremediabl[y] adverse consequences flow[ed] from requiring a later challenge.'

Reno, 509 U.S. at 57, 113 S.Ct. at 2496 (quoting Gardner, 387 U.S. at 164, 87 S.Ct. at 1524).

Here, as stated above, Dealer-Plaintiffs are not subject to Regulation 37 in conducting their "day-to-day affairs."

*a. Dealer-Plaintiffs Are Not Subject To the Regulation for Which They Seek Pre-Enforcement Review and Thus Cannot Establish a Nexus Between the Harm They Allege and Regulation 37.*

The nexus between the immediate harm Dealer-Plaintiffs' claim and the effect of Regulation 37 on Dealer-Plaintiffs' conduct is even more tenuous than the harm claimed by the Manufacturer Plaintiff in the consolidated case, AIAM v. DEM, C.A. No. 06-69T. Throughout their brief, Dealer-Plaintiffs bootstrap the claims of the Manufacturer-Plaintiff with their own to build the "stuck between a rock and a hard place" theory upon which they rely, but there is no Hobson's choice presented here.

Dealer-Plaintiffs are not being forced to "choose" between complying with Regulation 37 or face the imposition of "serious penalties" at the hand of state regulators. Indeed, Dealer-Plaintiffs could not "choose to comply with Regulation 37 if they wanted to. In fact, the harm Dealer-Plaintiffs are alleging results from the lack of decision-making power and the lack of a choice as to whether to comply. The harm Dealer-Plaintiffs allege would not result from the imposition of "serious penalties" associated

with their own non-compliance with Regulation 37, but rather would result from a business choice made by the Manufacturer-Plaintiff, *i.e.*, the possible future restriction in vehicle types available to them *if* the Manufacturer-Plaintiff chooses to comply with Regulation 37, *if*, and when, it becomes enforceable. In actuality, Regulation 37 has not been applied to Dealer-Plaintiffs or the Manufacturer-Plaintiff in any acute fashion.

Dealer- Plaintiffs point to a series of cases in support of their position that "the prospect of fear of future events may have a real impact on present affairs such that a preemptive challenge is ripe." See Linc. Dodge Br. at 21 (citing Volvo NA v. Mens International Professional Tennis Council, 857 F.2d 55 (2d Cir. 1988)). The cases Dealer-Plaintiffs rely upon, however, are distinguishable from the case at bar. For example, the Volvo NA case, much like the Ross-Simons of Warwick v. Baccarat, Inc., 217 F. 3d 8, 13-14 (1st Cir. 2000), is an antitrust case, which stands for the notion that injunctive relief may be appropriate to prevent a breach of contract where irreparable injury to professional reputation or competition would occur. See Volvo NA, 857 F.2d at 64 and Ross-Simons, 217 F. 3d at 13-14. Likewise, Dealer-Plaintiffs' reliance on the Pac. Gas & Elec. and Duke Power Co. cases are misplaced. See Pac.Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190 (1983).

Both Pac. Gas & Elec. and Duke Power Co. were cases that involved aspects of state regulatory schemes that were enforceable against the respective Plaintiffs at the time the Acts were challenged. For example, in Pac. Gas & Elec., the United States Supreme Court held that a statutory section that imposed "a moratorium on the certification of new nuclear plants . . . until there exists a demonstrated technology or means for the disposal of high-level nuclear waste," was ripe for review. Pac. Gas & Elec. 461 U.S. at 198. In

the same decision, the Supreme Court also held that the statutory section preceding the moratorium section was not ripe for review. The preceding statutory section, provided that "before additional nuclear plants may be built, the Energy Commission must determine on a case-by-case basis that there will be adequate storage of a plant's spent fuel rods." Id at 203. The Supreme Court, parroting the Ninth Circuit, stated, " we cannot know whether the Energy Commission will ever find a nuclear plant's storage capacity to be inadequate." Id. Here, we do not know whether EPA will grant the waiver of preemption to California – a central factual question.

Plaintiffs argue that the need to make compliance decisions years in advance and spend unrecoverable sums in order to comply with Regulation 37 requires an immediate decision from this Court. On this point Plaintiffs argue that, "defendant's position cannot be squared with the decision in Duke Power." The facts of the Duke Power Co. case, however, are simply not relevant or comparable to the case at hand. In Duke Power Co. citizens living near existing federally licensed, privately owned nuclear power plants sought to have the Price-Anderson Act declared unconstitutional. The Price Anderson Act imposed a $560 million cap on liability for nuclear accidents. The court found the claim to be ripe on the prudential considerations of the ripeness test because waiting for a nuclear accident to occur would not aid the court in resolution of whether the statute is or is not unconstitutional. More significantly, the Court held that to delay resolution would "frustrate one of the key purposes of the Price-Anderson Act – the elimination of doubts concerning the scope of private liability in the event of a major nuclear event." Duke Power Co., 438 U.S. at 82. The instant case is distinguishable in that a declaration from the Court on Dealer-Plaintiffs' EPCA and Clean Air Act Counts is not necessary to

provide the Plaintiffs with the relief they seek – no enforcement of Reg. 37. Moreover, the purpose of promulgating Regulating 37 pre-waiver decision, unlike the Price-Anderson Act, is a federal purpose.

b. *Dealer-Plaintiffs Have Not Alleged A Harm for Which They Are Entitled to Seek Injunctive Relief Because Pre-enforcement Review Would Violate the Scheme of the Clean Air Act.*

When deciding whether pre-enforcement review is appropriate the courts look first to the purpose of Congress. See Abbot Labs 387 U.S. at 140, 87 S.Ct. at 1511 (citing Board of Governors v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (court looking to purpose of Congress before granting judicial review of final agency action); Thunder Basin Coal Company v. Reich, 510 U.S. 200, 201, 114 S.Ct. 771, 773(finding that although the Mine Safety Act was facially silent about pre-enforcement claims, its comprehensive enforcement structure demonstrated that Congress intended to preclude challenges such as the present one); Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. at 160, 87 S.Ct. at 1523 (looking to Food, Drug, and Cosmetic Act to determine whether pre-enforcement suit was barred). Here, the Court should look to the comprehensive scheme of the Clean Air Act to determine whether pre-enforcement review is precluded.

Dealer-Plaintiffs argue that they are entitled to injunctive relief because they are suffering a current loss in value that results from projected restrictions in the types of vehicles that manufacturers would be willing to make available to them if Regulation 37 were to be enforced. Under this theory, however, a local car dealership could sue a Section 177 state every time such state adopted EPA's or California's vehicle emission standards, on the grounds that the mere promulgation of such standards may restrict or limit future vehicle lines that the vehicle manufacturers would be willing to produce.

Even more telling, under Dealer-Plaintiffs' theory, a local car dealership could sue the National Highway Transportation and Safety Administration every time it promulgates new fuel economy standards, which may restrict the types of vehicles manufacturers might be willing to produce. See Linc. Dodge Complaint ¶ 55 (NHTSA only allows 18-months lead-time for vehicle manufacturers to comply with new fuel economy standards). Of course, this approach makes little sense if courts are to give any weight to Congress' intent when passing the federal statutes that govern clean air and fuel economy.

In Massachusetts, for example, Federal District Judge Mazzone has held that reading Section 177 of the Clean Air act to require a waiver before the participating states that could invoke that section could adopt the California standards would be unworkable. According to that judge, such a reading "would virtually guarantee that section 177 states could never implement California standards in the same model year as California. This result does seem likely to lead to utter chaos." American Automobile Manufacturers Association v. Greenbaum, 1993 WL 443946, 7 (D. Mass. 1993).

The United States Court of Appeals for the Second Circuit reached the same conclusion, holding that that the waiver referenced in Section 177 of the CAA was not a "precondition" to the adopting of California emission standards but, rather, "the waiver is a precondition to enforcement." Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. New York Department of Environmental Conservation, 17 F.3d 521, 534 (2d Cir. 1994)("MVMA III"). Specifically, the Second Circuit provided:

> [I]t is sensible for DEC to adopt the standards prior to the EPA's having granted a waiver, so long as the DEC makes no attempt to enforce the plan prior to the time when the waiver is actually obtained.

Id.

A finding of immediate harm to establish jurisdiction is akin to a conclusion that Rhode Island's mere adoption of Regulation 37 has caused immediate harm to the current value of local car dealerships. Such a conclusion would act to deter Section 177 states from adopting California vehicle emission standards without an actual EPA waiver decision in hand – a result contrary to the intent of Congress.

In other words, a finding of pre-enforcement harm justifying the jurisdiction of this Court would act to caution states against adopting the very standards Congress has authorized them to adopt for fear of litigation even absent their ability to enforce. The net result of performing pre-enforcement review in this case would be to deprive Rhode Island of its status as a Section 177 state under the Clean Air Act and would ultimately be a decision Rhode Island was not authorized to adopt California's vehicle emission standards prior to a decision by EPA to waive federal preemption under the Clean Air Act. Plaintiffs' allegations of harm only hold weight, therefore, if Rhode Island's regulation was not validly adopted.

**CONCLUSION**

There is no amount of evidence that can change the simple fact that without a waiver of preemption from EPA, the State of Rhode Island cannot enforce Regulation 37. As a legal matter, therefore, the existence of Dealer Plaintiffs' harm is contingent upon the happening of a future event, which may never occur. As such this Court does not have subject-matter jurisdiction to address these issues.

Respectfully Submitted,

Defendant
By his Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Of Counsel:

Timothy Pavilonis, Esq.
Office of Legal Counsel
Rhode Island Department of
Environmental Management
235 Promenade Street
Providence, RI 02908

*For Defendant W. Michael Sullivan, in his official capacity as Director of the Rhode Island Department of Environmental Management.*

Tricia K. Jedele #5958
Michael Rubin #3656
Special Assistant Attorneys General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2400
Fax: (401) 222-3016

**CERTIFICATION**

I, the undersigned, hereby certify that a true copy of the within document was served electronically and by regular mail, postage pre-paid, on this 26 day of June, 2006 to those indicated below:

Raymond B. Ludwiszewski, Esq.
Charles H. Haake, Esq.
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Ave. NW
Washington, DC 20036

Kristin E. Rodgers, Esq.
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

Patricia K. Rocha, Esq.
John A. Tarantino, Esq.
Katy A. Hynes, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Stuart A.C. Drake, Esq.
Andrew B. Clubok, Esq.
KIRKLAND & ELLIS, LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Timothy Pavilonis, Esq.
Office of Legal Counsel
Rhode Island Department of
Environmental Management
235 Promenade Street
Providence, RI 02908

Cynthia Giles, Esq.
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903

Brad Kuster, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602

David Bookbinder, Esq.
Sierra Club
408 C Street NE
Washington, DC 20002