IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ASSOCATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,<br><br>Plaintiff,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his official Capacity as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | C.A. No. 06-69T |
| LINCOLN DODGE, INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his official Capacity as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | C.A. No. 06-70T |

**DEFENDANT AND DEFENDANT-INTERVENORS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW HERE COME Defendant, RHODE ISLAND, and Defendant-Intervenors and jointly move this Court, pursuant to Federal Rules of Civil Procedure, Rule 12(c), to dismiss Plaintiffs' Complaints in the above-captioned matters for the reasons set forth in the attached memorandum of law.

PDF created with pdfFactory trial version www.pdffactory.com

Defendants
By their Attorney,

PATRICK C. LYNCH
Attorney General

*/s/ Tricia K. Jedele*

Tricia K. Jedele #5958
Special Assistant Attorney General
& Environmental Advocate
150 South Main Street
Providence, RI 02903
(401) 274-4400
(401) 222-3016 (fax)

Defendant-Intervenors
By their Attorney,

*/s/ Cynthia J. Giles*

Cynthia J. Giles, Esq. #5868
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903
(401) 351-1102
(401) 351-1130 (fax)

*Stephen F. Hinchman, Esq.*
*David Bookbinder, Esq.*
*Melissa A. Hoffer, Esq.*
*Matthew F. Pawa, Esq.*

Pro Hac Vice Counsel
for Defendant Intervenors

**CERTIFICATION**

I hereby certify that on the 8th day of April, 2008, I sent a true copy of the within by electronic means (ECF) to:

Joseph V. Cavanagh, Jr.
jvc@blishcavlaw.com,

Andrew B. Clubok
aclubok@kirkland.com

Stuart C. Drake
sdrake@kirkland.com

Mary C. Dunn
mcd@blishcavlaw.com

Kristin E. Rogers
ker@blishcavlaw.com

Patricia K. Rocha
procha@apslaw.com
dhumm@apslaw.com
jtarantino@apslaw.com

and by regular mail to:

Charles H. Haake
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

Raymond B. Ludwiszewski
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

*/s/ Tricia K. Jedele*

PDF created with pdfFactory trial version www.pdffactory.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ i

<u>INTRODUCTION</u> ........ 2

I. STANDARD OF REVIEW ........ 3

II. REGULATORY BACKGROUND ........ 4

A. The Clean Air Act Authorizes A Dual Regulatory Structure For Controlling Emissions From New Motor Vehicles ........ 4

B. The Energy Policy and Conservation Act's Fuel Economy Program ........ 6

III. BACKGROUND OF IDENTICAL CASES THAT THE AUTOMAKER PLAINTIFFS FILED AND LITIGATED IN VERMONT AND CALIFORNIA ........ 6

IV. ARGUMENT ........ 10

A. PlaintiffS' Complaints Must Be Dismissed Under The Doctrines That Preclude Relitigation Of Issues And Claims That Have Already Been Decided ........ 10

B. PLAINTIFFS ARE PRECLUDED FROM RELITIGATING THEIR CAA AND EPCA CHALLENGES ........ 11

1. <u>The EPCA Preemption Issues That Plaintiffs Raise Here Are The Same Preemption Issues That Were Decided By The California And Vermont Courts.</u> ........ 12

2. <u>The EPCA Issues Were "Actually Litigated" in California And Vermont</u> ........ 13

*a. Vermont* ........ 13

*b. California* ........ 15

3. The Adjudicated Issues Meet the Finality Requirement ........ 15

*a. The Vermont judgment precludes relitigation of these issues notwithstanding pendency of appeal to the Second Circuit* ........ 15


PDF created with pdfFactory trial version www.pdffactory.com

b. *The California decision can be afforded preclusive effect even absent entry of final judgment* ........................ 15

4. **Resolution Of The EPCA Issues Was Essential To The Vermont And California Courts' Adverse Adjudications Against Plaintiffs** ........................ 16

5. **The CAA Issues Are Also Barred By Precluded** ........................ 17

C. **The Rhode Island Dealers Are In Privity With The California And Vermont Plaintiffs And The Collateral Estoppel Doctrine Bars Their EPCA And CAA Challenges** ........................ 19

1. **The Rhode Island Auto Dealers are in Privity with AIAM and the Alliance Plaintiffs because of their Long-Standing Contractual Relationships with Each Other and therefore are Bound by the Prior Adjudications.** ........................ 19

2. **The Rhode Island Auto Dealers Are Also Bound Under The Doctrine Of Virtual Representation.** ........................ 21

D. **The Exceptions to Collateral Estoppel Do Not Apply in This Case.** ........................ 23

IV. **CONCLUSION** ........................ 24

PDF created with pdfFactory trial version www.pdffactory.com

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Allen v. McCurry, 449 U.S. 90 (1980) ....................10

American Automobile Manufacturers Ass'n v. Massachusetts Department of Environmental Protection ("AAMA v. MDEP"), 31 F.3d 18 (1st Cir.1994) ....................4,5

Aponte-Torres v. University of Puerto Rico, 445 F.3d 50 (1st Cir. 2006) ....................3

Berner v. Delahanty, 129 F.3d 20 (1st Cir. 1997) ....................21

Blonder-Tongue Lab., Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971) .......10, 11

Burns v. Conley, 526 F.Supp.2d 235 (D.R.I. 2007) ....................4

Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252 (1st Cir. 1993) ....................23

Collier v. City of Chicopee, 158 F.3d 601 (1st Cir. 1998) ....................3

Commodity Futures Trading Commission v. Board of Trade of City of Chicago, 701 F.2d 653 (7th Cir. 1983) ....................17

Cruz v. Melecio, 204 F.3d 14 (1st Cir. 2000) ....................15, 16

DeCosta v. Viacom International, Inc., 758 F. Supp. 807 (D.R.I. 1991) ....................10

Engine Manufacturers Ass'n v. EPA, 88 F.3d 1075 (D.C. Cir. 1996) ....................4

González v. Banco Cent. Corp., 27 F.3d 751 (1st Cir.1994) ....................10, 21, 22

Grella v. Salem Five Cent Savings Bank 42 F.3d 26 (1st Cir.1994) ....................10, 11

In Re Belmont Realty Corp., 11 F.3d 1092 (1st Cir. 1993) ....................15

In re Public Service Company of New Hampshire, 848 F. Supp. 318 (D.R.I. 1994) ....................10

In re Sonus Networks, Inc., 499 F.3d 47 (1st Cir. 2007) ....................23

Lanphere Enterprises v. Doorknob Enterprises, LLC, 145 Fed. Appx. 589 (9th Cir. 2005) ......20

Lummus Company v. Commonwealth Oil Refining Company, 297 F.2d 80 (2d Cir. 1961) ......16



PDF created with pdfFactory trial version www.pdffactory.com

Massachusetts v. EPA, 127 S.Ct. 1438 (2007) ....................................................14

Monarch Life Insurance Company v. Ropes & Gray, 65 F.3d 973, 978 n.8 (1st Cir. 1995) ..11, 15

Montana v. U. S., 440 U.S. 147 (1979) ....................................................10, 13

Motor & Equipment Manufacturers Ass'n v. EPA, 627 F.2d 1095 (D.C. Cir. 1979) ...............4

National Distributors, Inc. v. Teamsters Local Union No. 430, 497 F. Supp. 2d. 315 (D.R.I. 2007) ....................................................22

N.L.R.B. v. Donna-Lee Sportswear Co., Inc., 836 F.2d 31 (1st Cir. 1987) ....................20, 21

Parklane Hosiery Company v. Shore, 439 U.S. 322 (1979) ......................................11

Pasdon v. City of Peabody, 417 F.3d 225 (1st Cir. 2005) ......................................3

People's Liquor Warehouse-Hopkinton, Inc. v. Department of Business Regulation, 2007 RI Super. LEXIS 78 ....................................................20

Perez-Guzman v. Gracia, 346 F.3d 229 (1st Cir. 2003) ......................................22

Petit v. City of Chicago, 766 F. Supp. 607 (N.D. Ill. 1991) ......................................22

Pina v. Rodriguez, 278 F.Supp, 2d 195 (D.P.R. 2003) ......................................16

R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178 (1st Cir. 2006) ..............................4

Richards v. Public Serv. Co., 848 F. Supp. 318 (D.R.I. 1994) ......................................23

Rowe v. New Hampshire Motor Transport Ass'n, 128 S.Ct. 989 (2008) ..............................23

Southern Pacific Railroad Company v. United States, 168 U.S. 1 (1897) ..............................10

Taunton Gardens Co. v. Hills, 557 F.2d 877 (1st Cir. 1977) ......................................15

Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146 (MA 1988) ..............................16

Torromeo v. Town of Fremont, 2004 WL 2300481 (D.N.H. 2004) ......................................4

Tyus v. Schoemehl, 93 F.3d 449 (8th Cir. 1996) ......................................22, 23

U.S. v Stauffer Chemical Company, 464 U.S. 165 (1984) ......................................11, 23

U.S. v. AVX Corp., 962 F.2d 108 (1st Cir. 1992) ......................................21



PDF created with pdfFactory trial version www.pdffactory.com

Wade v. Brady, 460 F.Supp. 2d 226 (D. Mass. 2006) ....................................................13

Washington v. State Street Bank & Trust Company., 14 Fed. Appx. 12 (1st Cir. 2001) ..........15

Watterson v. Page, 987 F.2d 1 (1st Cir.1993) ......................................................................4

Whitehall Company, Ltd. v. Barletta, 404 Mass. 497 (Mass.1989) ...............................15

## VERMONT DECISIONS AND ORDERS

Association of International Automobile Manufacturers v. Torti, No. 2:05-cv-00304 (D. Vt.).......................................................................................................8

Green Mountain Chrysler-Plymouth-Dodge-Jeep v. Crombie, 508 F. Supp. 2d 295 (D. Vt. 2007) ..........................................................................................9, 13, 18, 19

## CALIFORNIA DECISIONS AND ORDERS

Central Valley Chrysler-Jeep, Inc. v. Goldstene, No 1:04-cv-06663, Docket # 660 (E.D. Cal. March 26, 2008) ....................................................................................9

Central Valley Chrysler-Jeep, Inc. v. Goldstene, 529 F.Supp.2d 1151 (E.D. Cal. 2007) ...9, 14, 15

Central Valley v. Witherspoon, 2007 U.S. Dist. LEXIS 3002 (E.D. Cal., Jan. 16, 2007) ..............................................................................9, 16, 18, 19

Central Valley Chrysler-Jeep, Inc. v. Witherspoon, 456 F. Supp. 2d 1160 (E.D. Cal. 2006) ......9

## WAIVER LITIGATION

State of California, et al. v. U.S. Environmental Protection Agency, No. 08-1063 (D.C.Cir. filed Feb. 19, 2007)...............................................................................5

State of California, et al. v U.S. Environmental Protection Agency, No. 08-70011 (9th Cir. filed Jan. 2, 2008)................................................................................5

Sierra Club v. U.S. Environmental Protection Agency, No. 08-70030 (9th Cir. filed Jan. 2, 2008) (consolidation pending) ...............................................5



PDF created with pdfFactory trial version www.pdffactory.com

## STATUTES

42 U.S.C. § 7507 ....................5

42 U.S.C. § 7543(b) ....................5

42 U.S.C. § 7543(b)(3) ....................5

49 U.S.C. § 32902(c) ....................6

49 U.S.C. § 32902(f) ....................6, 13

49 U.S.C. § 32919(a) ....................6, 12, 13

## REGULATIONS

42 Fed. Reg. 13807 (Mar. 14, 1977) ....................6

71 Fed. Reg. 17639 (Apr. 6, 2006) ....................6

49 C.F.R. § 1.50(f) ....................6

Cal.Code Regs. tit. 13, § 1961 ....................5

R.I. Code R. 37.2.3 ....................5

## OTHER AUTHORITIES

Restatement (Second) of Judgments ....................13, 15, 16, 17



PDF created with pdfFactory trial version www.pdffactory.com

**INTRODUCTION**

This action represents the third attempt by the same major national and international automakers to nullify the same motor vehicle standards designed to reduce greenhouse gas emissions. The standards were first adopted by California, and later by several other states, including Rhode Island. Because these automakers have twice litigated and lost identical legal challenges to these very motor vehicle standards in federal district courts in California and Vermont, they are precluded from relitigating the issues here in Rhode Island.

California created the greenhouse gas standards under the authority of the federal Clean Air Act ("CAA") section 209(b), and Rhode Island adopted California's standards as permitted by section 177 of the CAA. The automakers' central argument is that Rhode Island's greenhouse gas standards are preempted by the Energy Policy and Conservation Act ("EPCA") because in addition to reducing greenhouse gas emissions, they argue the standards also implicate fuel economy – an area within EPCA's supposedly exclusive purview.

The California and Vermont courts rejected that argument, concluding that once the Environmental Protection Agency ("EPA") grants California a waiver of preemption under section 209(b) of the CAA, EPCA does not preempt the California emission standards. The collateral estoppel doctrine, therefore, bars the automakers from relitigating the identical preemption challenges raised in this case.

The automakers also raised the same CAA section 209(a) preemption challenge in the California and Vermont cases as they now raise in Rhode Island. Both the Vermont and California courts dismissed the automakers' CAA preemption theories and these determinations, likewise, cannot be litigated again.



PDF created with pdfFactory trial version www.pdffactory.com

The elements of the collateral estoppel doctrine are easily met here. The EPCA and CAA preemption issues raised by Plaintiffs: (1) are the same as those involved in the prior actions; (2) were actually litigated; (3) were finally adjudicated with "sufficient firmness" and; (4) the determination of those issues was essential to the judgments. That the automakers have enlisted local Rhode Island auto dealers as named plaintiffs does not defeat the application of collateral estoppel. The Rhode Island auto dealers, which have close and longstanding business relationships as franchisees of the automaker Plaintiffs, are in privity with the automakers and therefore also bound by the adjudications in California and Vermont. The Rhode Island auto dealers' interests were also fully represented by similarly situated dealer plaintiffs in California and Vermont.

The Court should find that the collateral estoppel doctrine prevents all the plaintiffs from relitigating these preemption claims and should resolve this action in Rhode Island's favor.

## I. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is resolved under the same standard as a motion under Rule 12(b)(6). Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005); Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). Dismissal is proper when the moving party demonstrates that the uncontested and properly considered facts conclusively establish the moving party's entitlement to judgment as a matter of law. Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006). Moreover, because the authenticity of the legal pleadings, related documents, and in-court statements made by the automakers in the Vermont and California cases is not disputed, the Court may take judicial notice of them in determining whether collateral estoppel bars relitigation without converting the



PDF created with pdfFactory trial version www.pdffactory.com

motion to one for summary judgment. R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) (Court of Appeals taking judicial notice of pleadings and transcript from prior state court litigation in affirming district court's grant of motion for judgment on the pleadings that litigation was precluded by doctrine of *res judicata*); Burns v. Conley, 526 F.Supp.2d 235, 241 (D.R.I. 2007)(relying on R.G. Financial); Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993) (in a rule 12(c) motion, like rule 12(b)(6) motion, a court may take judicial notice of facts susceptible to judicial notice); Torromeo v. Town of Fremont, 2004 WL 2300481 at 1-4 (D.N.H. 2004) (citing Watterson) (taking judicial notice of prior state and federal court pleadings by plaintiff in resolving Rule 12 motion on *res judicata* grounds).

## II. REGULATORY BACKGROUND

### A. The Clean Air Act Authorizes A Dual Regulatory Structure For Controlling Emissions From New Motor Vehicles

The CAA allows both EPA and California to regulate air pollutants from new motor vehicles – a scheme often referred to as the CAA's two-car system. See Engine Manufacturers Ass'n v. EPA, 88 F.3d 1075, 1080 (D.C. Cir. 1996) (under the CAA motor vehicles must be either "federal cars" designed to meet the EPA's standards or "California cars" designed to meet the California standards"); accord American Automobile Manufacturers Ass'n v. Massachusetts Department of Environmental Protection ("AAMA v. MDEP"), 31 F.3d 18, 21 (1st Cir.1994). Under this dual regulatory structure, EPA is required by section 202(a) of the CAA to set default national emissions standards for air pollutants generated by new motor vehicles, while California is authorized by section 209(b) to establish alternative, and usually more advanced standards. 42 U.S.C. §§ 7521(a), 7543(b); see Motor & Equipment Manufacturers Ass'n v. EPA, 627 F.2d 1095, 1110-11 (D.C. Cir. 1979). Section 177, in turn, allows states, including Rhode Island, to



PDF created with pdfFactory trial version www.pdffactory.com

adopt regulations identical to California's in lieu of enforcing federal vehicle emissions standards. 42 U.S.C. § 7507.

In this case, EPA has not established regulations for greenhouse gas emissions. Thus, in 2006, Rhode Island adopted the California greenhouse gas regulations. See R.I. Code R. 37.2.3 (adopting California's GHG emission standards by reference to the Cal.Code Regs. tit. 13, § 1961). Before California or Rhode Island can implement California's greenhouse gas regulations, however, California must first obtain a waiver of preemption from EPA based on the criteria contained in section 209(b), 42 U.S.C. § 7543(b).[1] If the waiver is ultimately granted, Rhode Island and other adopting states must strictly adhere to the California regulations. Pursuant to section 177, state standards must be "identical" to the California standards for the same model year, and, among other things, states cannot take any action that would have the effect of creating a motor vehicle different from those certified under the California standards, or a "third vehicle." Id. at § 7507. See also AAMA v. MDEP, 31 F.3d at 21 (reviewing § 177). Rhode Island adopted California's standards by reference, and Rhode Island's greenhouse gas standards will become enforceable if and when California obtains a waiver from EPA, affording Rhode Island's greenhouse gas regulations the identical force and effect of any EPA standard. 42 U.S.C. § 7543(b)(3).

---

[1] On December 19, 2007, EPA denied California's request for a waiver of preemption. California, the 177 states, and a number of the Defendant-Intervenors are appealing EPA's decision. See State of California, et al. v U.S. Environmental Protection Agency, No. 08-70011 (9th Cir. filed Jan. 2, 2008); Sierra Club v. U.S. Environmental Protection Agency, No. 08-70030 (9th Cir. filed Jan. 2, 2008) (consolidation pending); and State of California, et al. v. U.S. Environmental Protection Agency, No. 08-1063 (D.C.Cir. filed Feb. 19, 2007).



PDF created with pdfFactory trial version www.pdffactory.com

**B. The Energy Policy and Conservation Act's Fuel Economy Program**

EPCA establishes mandatory fuel economy standards for new motor vehicles, better known as corporate average fuel economy standards ("CAFE standards"). EPCA directs the Secretary of Transportation to set CAFE standards for cars and light trucks at "maximum feasible average fuel economy levels." 49 U.S.C. § 32902(c). The Secretary has delegated this authority to the National Highway Transportation Safety Administration ("NHTSA"). 49 C.F.R. § 1.50(f).

EPCA contains an express preemption provision that generally forbids states from enforcing laws "related to fuel economy standards." 49 U.S.C. § 32919(a). At the same time, however, the statute requires NHTSA to take into account "the effect of other motor vehicle standards of the Government on fuel economy" in determining maximum feasible fuel economy levels. 49 U.S.C. § 32902(f). "Other motor vehicle standards of the Government," include California emission standards. See Pub. L. No. 94-163 § 502(d)(3)(D)(i), 89 Stat. 871, 902-905 (1975); 42 Fed. Reg. 13807, 13814-15 (Mar. 14, 1977) (first CAFE rulemaking analyzing fuel economy impacts in section entitled "Effect of California emissions standards"); 71 Fed. Reg. 17639, 17642 (Apr. 6, 2006) (most recent CAFE rulemaking assessing California standards in section entitled "Federal Motor Vehicle Emissions Standards").

**III. BACKGROUND OF IDENTICAL CASES THAT THE AUTOMAKER PLAINTIFFS FILED AND LITIGATED IN VERMONT AND CALIFORNIA**

In 2004 and 2005, California and eleven other states adopted identical greenhouse gas regulations under the authority of sections 209(b) and 177 of the CAA.[2] In response, the Association of International Automobile Manufacturers ("AIAM"), and the Alliance of

---

[2] Presently, a total of 16 states have adopted the California greenhouse gas standards.



PDF created with pdfFactory trial version www.pdffactory.com

Automobile Manufacturers ("AAM"), Chrysler Corporation ("Chrysler") and General Motors Corporation ("GM") (sometimes collectively referred to as "the Alliance Plaintiffs") filed three lawsuits over a fourteen-month period against three separate states (California, Vermont and Rhode Island) in three district courts raising identical legal challenges to enforcement of the California greenhouse gas standards.

Each case involves the same motor vehicle manufacturers and trade associations, represented by the same law firms, asserts the same claims, rights and issues, raises the same legal and factual questions, and seeks the same declaratory and injunctive relief. The difference among the three sets of cases with respect to the named plaintiffs is that separate local automobile dealerships were also joined as plaintiffs in each state; [3] however, all of these dealers are either franchisees of GM or Chrysler.

In California, the Alliance Plaintiffs filed their first case in December of 2004.[4] AIAM intervened in October, 2005.[5] All Plaintiffs sought declaratory and injunctive relief against the California greenhouse gas standards on the grounds that the regulations are preempted by EPCA (Count I), the CAA (Count II), and the Foreign Powers doctrine (Count III), and that they violate the dormant Commerce Clause (Count IV) and the Sherman Anti-Trust Act (Count V). See First Amended Complaint For Declaratory and Injunctive Relief, No. 1:04-cv-06663-REC-LJO (E.D. Cal. filed Feb. 16, 2005) ("FAC-CA").

---

[3] The Tulare County Farm Bureau was also named as a plaintiff in the California case.

[4] See Complaint, No. 1:04-cv-06663-REC-LJO (E.D. Cal. filed Dec. 7, 2004).

[5] See Complaint in Intervention, No. 1:04-cv-06663-REC-LJO (E.D. Cal. filed Feb. 3, 2005).



PDF created with pdfFactory trial version www.pdffactory.com

In Vermont, the Alliance Plaintiffs and AIAM each filed separate complaints in November of 2005.[6] [7] The Vermont cases were consolidated in April, 2006.[8] These complaints raised the same claims as in California and are exactly parallel with the consolidated cases filed just months later here in Rhode Island. The first complaint, filed by the Alliance Plaintiffs, contended that the Vermont greenhouse gas regulations are preempted by EPCA (Count I), the CAA (Count II), and the Foreign Powers doctrine (Count IV), and that the Vermont regulations violate section 177 of the CAA (Count III), the dormant Commerce Clause (Count V) and the Sherman Anti-Trust Act (Count VI). See the Alliance Plaintiffs'-VT Complaint. The second complaint, filed by AIAM, alleged EPCA preemption (Count I) and CAA preemption (Count II). See AIAM-VT Complaint.

The complaints in the California, Vermont and Rhode Island cases are so similar that in many respects they track each other verbatim. The EPCA claims, for example, are identical among the three cases. Much of the language in the Rhode Island complaints tracks verbatim with the Vermont complaints. Cf., the Alliance Plaintiffs'-VT Complaint, ¶¶96-98 (Exhibit A), with the Alliance Plaintiffs'-RI Complaint, ¶¶70-72; and AIAM-VT Complaint, ¶¶54-57 (Exhibit B), with AIAM-RI Complaint, ¶¶53-55. The Vermont and Rhode Island complaints, in turn, are virtually identical, except for a few introductory words, with the California Complaint. Cf., FAC-CA at ¶¶113-115 (Exhibit C).

---

[6] See Complaint, No. 2:05-cv-00302 (D. Vt. filed Nov. 18, 2005) ("the Alliance Plaintiffs'-VT Complaint").

[7] See Complaint for Injunctive and Declaratory Relief, No. 2:05-cv-00304 (D. Vt. filed Nov. 18, 2005) ("AIAM-VT Complaint").

[8] See minute order granting motion to consolidate cases in Association of International Automobile Manufacturers v. Torti, No. 2:05-cv-00304 (D. Vt. Apr. 5, 2006)



PDF created with pdfFactory trial version www.pdffactory.com

The California district court has issued three separate rulings that dispose of all of Plaintiffs' claims. First, the California court dismissed Plaintiffs' commerce clause and anti-trust claims on Defendant's motion for judgment on the pleadings. Central Valley Chrysler-Jeep, Inc. v. Witherspoon, 456 F. Supp. 2d 1160, 1188 (E.D. Cal. 2006). Second, the court declared that California was enjoined from implementation or enforcement of the greenhouse gas regulations unless EPA grants a waiver of preemption under the CAA, and that the CAA claim was otherwise moot. Central Valley v. Witherspoon, 2007 U.S. Dist. LEXIS 3002 at 6-7, 37 ELR 20023 at 18-24. Third, and most recently, the court adjudicated Plaintiffs' EPCA and foreign powers claims in California's favor on California's Motion for Summary Judgment. Central Valley Chrysler-Jeep, Inc. v. Goldstene, 529 F.Supp.2d 1151, 1189 (E.D. Cal. 2007). The California court closed the case on March 26, 2008 and California has asked the court to enter final judgment. See order closing the case in Central Valley Chrysler-Jeep, Inc. v. Goldstene, No 1:04-cv-06663, Docket # 660 (E.D. Cal. March 26, 2008)

In Vermont, before trial, Plaintiffs dismissed all claims except the preemption counts under EPCA, the CAA and the Foreign Powers doctrine. In September of 2007, following a sixteen-day bench trial, the district court granted judgment for Vermont on the EPCA and Foreign Powers preemption counts, and dismissed the CAA claim. See Green Mountain Chrysler-Plymouth-Dodge-Jeep v. Crombie, 508 F. Supp. 2d 295, 342 n.50, 399 (D. Vt. 2007), appeal docketed, No. 07-4342-cv(L), No. 07-4360(con) (2d Cir. Oct. 5, 2007). On appeal to the Second Circuit, Plaintiffs challenge only the district court's resolution of the EPCA and CAA preemption claims.[9]

---

[9] Defendants can provide the Court with the referenced briefs upon request.



PDF created with pdfFactory trial version www.pdffactory.com

## IV. ARGUMENT

### A. Plaintiffs' Complaints Must Be Dismissed Under The Doctrines That Preclude Relitigation Of Issues And Claims That Have Already Been Decided.

Collateral estoppel and the related doctrine of *res judicata* "are expressions of a fundamental public policy favoring repose for both society and litigants," and are not "mere technical rules of convenience." DeCosta v. Viacom International, Inc., 758 F. Supp. 807, 811 (D.R.I. 1991), rev'd on other grounds, 981 F.2d 602 (1st Cir. 1992). The federal common law doctrine of collateral estoppel (issue preclusion) bars relitigation of all factual and legal issues that were actually decided in previous litigation, whether on the same or a different claim.[10] Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir.1994). Under this doctrine, a "question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies...." Montana v. U. S., 440 U.S. 147, 153 (1979) (quoting Southern Pacific Railroad Company v. United States, 168 U.S. 1, 48-49 (1897)). As the Montana court explained, "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. at 153-154 (citations omitted); accord Allen v. McCurry, 449 U.S. 90, 94 (1980); In re Public Service Company of New Hampshire, 848 F. Supp. 318, 325 (D.R.I. 1994).

---

[10] Federal law governs where, as here, collateral estoppel is asserted based upon a prior federal court decision of federal law. Blonder-Tongue Lab., Inc. v. University of Illinois Foundation, 402 U.S. 313, 324 n.12 (1971); González v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir.1994)



PDF created with pdfFactory trial version www.pdffactory.com

Rhode Island, although not a party to the Vermont and California litigation may raise collateral estoppel because under the doctrine of non-mutual collateral estoppel, a "party invoking issue preclusion need not show that it was privy to the first proceeding." Monarch Life Insurance Company v. Ropes & Gray, 65 F.3d 973, 978 n.8 (1st Cir. 1995) (citing Parklane Hosiery Company v. Shore, 439 U.S. 322, 326-28 (1979) and Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 (1971)). Rhode Island need only show that the party *against* whom issue preclusion will be applied had a fair opportunity to litigate the issue fully. Id

The doctrine of collateral estoppel has four elements. It requires that (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." Grella, 42 F.3d at 30 -31 (citations omitted). As demonstrated below, the elements of collateral estoppel are satisfied, and thus the EPCA and CAA claims (the two remaining claims) of all Plaintiffs must be dismissed as a matter of law.

## B. PLAINTIFFS ARE PRECLUDED FROM RELITIGATING THEIR CAA AND EPCA CHALLNEGES

Each of the issues raised by Plaintiffs' Rhode Island EPCA and CAA preemption challenges, are identical to those issues litigated and lost by Plaintiffs in the Vermont and California cases, and the courts' decisions on those issues were essential to the adverse adjudications against Plaintiffs. Plaintiffs are therefore precluded from relitigating these issues here. See U.S. v Stauffer Chemical Company, 464 U.S. 165, 579 (1984) ("it is unfair to the



PDF created with pdfFactory trial version www.pdffactory.com

winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy.")

1. <u>**The EPCA Preemption Issues That Plaintiffs Raise Here Are The Same Preemption Issues That Were Decided By The California And Vermont Courts.**</u>

A straightforward review of the complaints that Plaintiffs filed in the Rhode Island case compared with the complaints filed in Vermont and California reveals that Plaintiffs in this case assert the same three core EPCA issues that Plaintiffs raised and lost in Vermont and California:

(1) Whether the greenhouse gas standards are "'related to fuel economy standards and average fuel economy standards,' and are preempted under 49 U.S.C. § 32919(a)." AIAM Complaint, ¶ 53; <u>see</u> the Alliance Plaintiffs' Complaint, ¶ 70 (same); AIAM-VT Complaint, ¶55 (same) (Exhibit B); the Alliance Plaintiffs'-VT Complaint, ¶96 (same) (Exhibit A); FAC-CA at ¶113 (same) (Exhibit C);

(2) Whether the greenhouse gas standards "impermissibly intrude on [NHTSA's field of fuel economy regulation] by establishing fleet-wide limits on $CO_2$ emission per mile, and thereby regulat[e] the fuel economy of motor vehicles sold in Rhode Island." AIAM Complaint, ¶ 54; <u>see</u> the Alliance Plaintiffs' Complaint, ¶ 71 (same); AIAM-VT Complaint, ¶56 (same) (Exhibit B); the Alliance Plaintiffs'-VT Complaint, ¶97 (same) (Exhibit A); FAC-CA at ¶114 (same) (Exhibit C);

(3) Whether the greenhouse gas standards "stand as an obstacle to accomplishment and execution of the full purposes and of the objectives of Congress in enacting EPCA, and frustrate the full effectiveness of the CAFE program." AIAM Complaint, ¶ 55; <u>see</u> the Alliance Plaintiffs Complaint, ¶ 71-72 (same); AIAM-VT Complaint, ¶57 (same) (Exhibit B); the Alliance Plaintiffs'-VT Complaint, ¶97-98 (same) (Exhibit A); FAC-CA at ¶115 (same) (Exhibit C).



PDF created with pdfFactory trial version www.pdffactory.com

Indeed, as noted supra, the relevant language of the complaints filed in this Court "tracks almost verbatim the language of Plaintiffs" complaints in Vermont and California. See Montana, 440 U.S. at 157 (holding new complaint presenting expressly and definitively identical issues as prior complaint to be precluded by prior adverse adjudication of those issues).

The first element of collateral estoppel is therefore met.

2. **The EPCA Issues Were "Actually Litigated" In California And Vermont**

The term "actually litigated" means that an issue has been properly raised, submitted for determination, and necessarily determined by the earlier decision. Wade v. Brady, 460 F.Supp. 2d 226, 240 (D. Mass. 2006) (citing Restatement (Second) of Judgments § 27 cmt. (d)). Each of the EPCA issues presented here was submitted to and determined by the district courts in Vermont and California.

***a. Vermont***

In Vermont, the Green Mountain court held that EPCA did not preempt the California regulation because, once EPA grants the waiver, EPCA section 32902(f) treats the California regulation as a federal regulation, thus warranting an analysis of the relationship of two federal statutes, EPCA and the CAA, rather than a traditional preemption analysis. See Green Mountain, 508 F.Supp.2d at 343-50 (section entitled "A. The Preemption Doctrines Do Not Apply"). The Vermont court also directly addressed Plaintiffs' preemption theories, finding (1) there was no express preemption under Section 32919(a) because the text and history of EPCA are "quite clear that Congress expected NHTSA to take [EPA-approved emission] regulations into consideration," id. at 354, and because "[t]here is no persuasive evidence that Vermont's [greenhouse gas] regulation is a *de facto* fuel economy standard." Id. at 350-54; (2) there was no field preemption because "Plaintiffs have not shown that Congress exhibited a clear and manifest



PDF created with pdfFactory trial version www.pdffactory.com

intent to render the regulation of carbon dioxide emissions from motor vehicles exclusively a federal domain." Id. at 354-55; and (3) there was no conflict preemption because "Plaintiffs have not demonstrated that Congress' purpose and objectives have been thwarted by Vermont's [greenhouse gas] regulation." Id. at 355-57. The Vermont court further held that, even applying a traditional conflict preemption analysis, "Plaintiffs have not carried their burden to show that compliance with the regulation is not feasible; nor have they demonstrated that it will limit consumer choice, create economic hardship for the automobile industry, cause significant job loss, or undermine safety." Id. at 357-92.

***b. California***

The Central Valley court reached the same result. Also, relying upon the Supreme Court's observation in Massachusetts v. EPA, 127 S.Ct. 1438, 1461-62 (2007), that EPA's own regulation of harmful motor vehicle greenhouse gas emissions would not contravene EPCA's purpose, the California court found no basis to conclude that an EPA-approved emission standard functions any differently. Central Valley, 529 F. Supp. 2d at 1173-74. The California court held that the Supreme Court's recognition that an action by EPA to regulate greenhouse gases from motor vehicles would not conflict with EPCA's purpose negated Plaintiffs' theory that EPCA section 32919(a) expressly preempted the greenhouse gas regulations. Id. at 1174-76. Likewise, the California court held that California's greenhouse gas regulations are not de facto fuel economy standards, id., and that, because Congress intended there should be no conflict between EPA's protection of public health and welfare and NHTSA's duty to set fuel efficiency standards, the doctrine of conflict preemption does not apply. Id. at 1176-79.



PDF created with pdfFactory trial version www.pdffactory.com

Therefore, the second element of collateral estoppel is met, as the EPCA issues in this case were actually litigated and adjudicated in the Vermont and California actions.[11]

3. **The Adjudicated Issues Meet The Finality Requirement**

The Vermont and California decisions are valid and binding decisions that are sufficiently final for application of collateral estoppel.

*a. The Vermont judgment precludes relitigation of these issues notwithstanding pendency of appeal to the Second Circuit*

It is well settled in federal courts that the pendency of an appeal does not destroy the preclusive effect of a judgment. In Re Belmont Realty Corp., 11 F.3d 1092, 1095-96 (1st Cir.1993); Taunton Gardens Co. v. Hills, 557 F.2d 877, 879 n. 2 (1st Cir.1977); accord Cruz v. Melecio, 204 F.3d 14, 20-21 (1st Cir. 2000) (same) (citing Restatement (Second) of Judgments §13 cmt. f (1982); Washington v. State Street Bank & Trust Company, 14 Fed.Appx. 12 (1st Cir. 2001) (a federal court judgment has *res judicata* effect as soon as it is issued notwithstanding the possibility or even pendency of an appeal); Whitehall Company, Ltd. v. Barletta, 404 Mass. 497, 501 (Mass.1989) (collateral estoppel bars relitigation of any issue that "constituted, logically or practically, a necessary component of the decision reached" in the prior proceeding.)

Therefore, the Vermont judgment has preclusive effect even though it is being appealed to the Second Circuit.

[11] Unlike the Vermont court, the California court did not explicitly address the issue of field preemption because Plaintiffs' did not press the theory. Regardless, the California court's rejection of this issue is implicit in its conclusion that EPCA does not regulate greenhouse gases to the exclusion of CAA regulation of greenhouse gases, whether promulgated by EPA or California. See Central Valley at 1167-74; see also Monarch Life Insurance Company v. Ropes & Gray, 65 F.3d 973, 982 (1st Cir. 1995) (issue "may be actually litigated and resolved even if it is not explicitly decided, as long as it is logically necessary to [the court's] final decision.")



PDF created with pdfFactory trial version www.pdffactory.com

*b. The California decision can be afforded preclusive effect even absent entry of final judgment*

That the California court has not yet issued a formal final judgment is immaterial because its opinions and orders adjudicating all of Plaintiffs' claims are firm enough to be accorded preclusive effect. See Cruz, 204 F.3d at 20-21 (citing Restatement (Second) of Judgments §13 cmt. f (1982) ("for purposes of issue preclusion 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"); Pina v. Rodriguez, 278 F.Supp. 2d 195, 203 (D.P.R. 2003) ("it is well established that the finality requirement for collateral estoppel does not necessitate a final judgment. Rather, it requires that the earlier adjudication is sufficiently firm to be accorded conclusive effect"); Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146, 148-49 (Mass. 1988) (quoting Lummus Company v. Commonwealth Oil Refining Company, 297 F.2d 80, 89 (2d Cir. 1961), cert denied, 368 U.S. 986 (1962) ("Finality . . . may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be relitigated again"); see Restatement (Second) of Judgments §13 ("[F]or purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.")

Although the California court has not formally issued a final judgment, it has now closed the case and entry of judgment is the last remaining step. The California action is therefore sufficiently firm to be accorded preclusive effect. Indeed, Judge Ishii's order expressly declares these EPCA issues conclusively resolved not just for California, but for any other state adopting California's regulations. Central Valley, 2007 WL 4372878 at 40.

Therefore, the third element of collateral estoppel is met.



PDF created with pdfFactory trial version www.pdffactory.com

**4. Resolution Of The EPCA Issues Was Essential To The Vermont And California Courts' Adverse Adjudications Against Plaintiffs**

Likewise, the resolution of the EPCA issues was essential to the judgments rendered by the Vermont and California courts. See Restatement (Second) of Judgments § 27 comment h (1982) (issue is essential where judgment is dependent upon the determination of that issue, as compared to issues that have the characteristics of dicta). In these cases, the Vermont and California EPCA rulings were essential to the adjudications because the gravamen of Plaintiffs' preemption claims was their reliance upon EPCA, and both courts resolved all of those underlying issues against them.

In sum, the issue of whether these greenhouse gas standards are expressly or impliedly preempted under EPCA has been fully litigated and decided against Plaintiffs in two different federal district courts.

**5. The CAA Issues Are Also Barred By Preclusion**

Both the Vermont and California courts dismissed Plaintiffs' CAA preemption claims as moot. "A dismissal for mootness is a dismissal for lack of jurisdiction . . . with preclusive effect in subsequent litigation . . . on the issue of jurisdiction itself." See, e.g., Commodity Futures Trading Commission v. Board of Trade of City of Chicago, 701 F.2d 653, 656 (7th Cir. 1983) (J.Posner).

Plaintiffs brought the same CAA section 209(a) preemption challenges in California and Vermont as they now assert in Rhode Island. FAC-CA, ¶ 122 (Exhibit C); Alliance Plaintiffs'-VT Complaint, ¶ 104 (Exhibit A); AIAM-VT Complaint, ¶ 64 (Exhibit B); Alliance Plaintiffs' Complaint, ¶ 100; AIAM- Complaint, ¶ 62.



PDF created with pdfFactory trial version www.pdffactory.com

The California court declared that California was enjoined from implementation or enforcement of the greenhouse gas regulations unless and until EPA grants a waiver of section 209(a) preemption under the CAA. Witherspoon, 2007 U.S. Dist. LEXIS 3002 at 13. As the California court explained:

> Put simply and directly, this court has ruled, and the parties agree, that the Clean Air Act prevents the enforcement of California's proposed regulations absent a waiver of preemption by EPA. . . . The court will therefore decree that California is without authority to enforce its regulations absent a waiver of federal preemption under the Clean Air Act and will issue corresponding injunctive relief. The court will therefore dismiss any further action with respect to the Clean Air Act as moot.

*Id.* at 6. The Vermont court also dismissed Plaintiffs' CAA section 209(a) preemption claim and held: "The parties agree that enforcement of Vermont's [greenhouse gas] standards is preempted by Section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), unless and until the EPA Administrator grants California a waiver under Section 209(b), 42 U.S.C. § 7543(b), for its identical [greenhouse gas] regulations. . . . Plaintiffs' CAA counts are therefore moot." Crombie, 508 F. Supp. 2d at 342 n.50, 399.

Furthermore, in the California action the parties agreed, and the court held, that "EPA, in the process of granting a waiver of preemption, considers the arguments and positions of affected parties and makes adjustments to conditions, including effective dates, that EPA deems appropriate." Witherspoon, 2007 U.S. Dist. LEXIS 3002 at 6. Therefore, the California court held that "whatever California may seek to impose by way of an enforcement date, the final decision with respect to the establishment of reasonable enforcement dates rests with EPA's discretion, not with California or this court. Id. at 6-7. The court further held: "With a formal declaration by this court that California's regulations cannot be implemented or enforced without a Clean Air Act waiver by EPA, Plaintiffs have been granted as much relief as the court has



PDF created with pdfFactory trial version www.pdffactory.com

authority to grant with respect to Plaintiffs' request for relief in the [First Amended Compliant] regarding their claim for preemption under the Clean Air Act." Id. at 7. The Vermont court agreed and held that "the State of Vermont is not permitted to enforce its [greenhouse gas] regulation before EPA grants California a waiver," and this waiver process will take into account the factors described by the Witherspoon court. Crombie, 508 F. Supp. 2d at 342 n.50.

Plaintiffs therefore are precluded from litigating the CAA section 209(a) preemption issue for the same reasons that they are precluded from relitigating the EPCA issues: the CAA issues were actually litigated, finally adjudicated, and essential to the adjudication. Therefore, the Court should dismiss Count III of the Alliance's complaint and Count II of AIAM's complaint.

**C. The Rhode Island Dealers Are In Privity With The California And Vermont Plaintiffs And The Collateral Estoppel Doctrine Bars Their EPCA And CAA Challenges**

The collateral estoppel doctrine applies to AIAM and the Alliance (including GM and Chrysler) because they were the named plaintiffs in both the Vermont and California actions. The local Rhode Island auto dealer plaintiffs, who were not named plaintiffs in the prior actions, are nevertheless bound by the prior adjudications because: (1) the Rhode Island dealers are in direct privity with AIAM and the Alliance Plaintiffs; and (2) AIAM and the Alliance Plaintiffs virtually represented the Rhode Island dealers in the prior litigation.

**1. <u>The Rhode Island Auto Dealers are in Privity with AIAM and the Alliance Plaintiffs because of their Long-Standing Contractual Relationships with Each Other and therefore are Bound by the Prior Adjudications</u>**

The Rhode Island auto dealers, based on their long-standing contractual relationships as sales franchisees for GM and Chrysler, are in privity with AIAM and the Alliance Plaintiffs, who



PDF created with pdfFactory trial version www.pdffactory.com

were parties to and are bound by the prior adjudications in California and Vermont.[12] See N.L.R.B v. Donna-Lee Sportswear Co., 836 F.2d 31, 34-36 (1st Cir. 1987) ("The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit.") (quotations and citation omitted). Close, long-term business relationships, such as that between manufacturer-supplier and sales-franchisees are sufficient to establish privity. See Lanphere Enterprises v. Doorknob Enterprises, LLC, 145 Fed. Appx. 589, 592 (9th Cir. 2005) (holding franchisee in privity with franchisor for purposes of claim preclusion). The Rhode Island dealers are also in privity with their co-franchisees – the dealer-plaintiffs in the Vermont and California cases – who litigated the same issues the Rhode Island dealers here seek to litigate again. See People's Liquor Warehouse-Hopkinton, Inc. v. Department of Business Regulation, 2007 R.I. Super. LEXIS 78, at 26-27 (liquor store franchisees held to be in privity with other franchisees who had litigated and lost the same claims as co-plaintiffs with franchisor in prior federal court litigation).

Further, privity is properly established here where the greenhouse gas standards regulate manufacturers, not new vehicle dealers. The local dealer-Plaintiffs are affected by the regulations only indirectly, and speculatively, depending on compliance strategies pursued by the manufacturer-plaintiffs. See, e.g., the Alliance Plaintiffs' Memo in Opp., No. 06-70T, at 19-20 (D.R.I. filed May 31, 2006) (doc. # 23-1) ("the dealers who will sustain the product line losses

---

[12] See the Alliance's Memo in Opp., No. 06-70T, at 1 (D.R.I. filed May 31, 2006) (doc. # 23-1) ("The plaintiffs are 10 new-vehicle dealers in this State, two manufacturers who supply the dealer plaintiffs with vehicles for sale in Rhode Island, and an association representing those and other new-vehicle manufacturers.")



PDF created with pdfFactory trial version www.pdffactory.com

and the highest cost increases are those supplied by the manufacturer plaintiffs").[13] Thus, any harm the dealers might suffer is contingent upon and derivative of harms to the plaintiff manufacturers who are already bound by the prior judgments. See Donna-Lee Sportswear Co., 836 F.2d 35 (finding privity where a party's presence in a case is derivative of a party who is bound by a prior determination, and where that party asserts identical interests and positions, offers duplicative evidence, raises the same issues and seeks the same relief).[14]

## 2. The Rhode Island Auto Dealers Are Also Bound Under The Doctrine Of Virtual Representation

Alternatively, the dealer plaintiffs are in privity with the named plaintiffs in the prior litigation under the doctrine of virtual representation. See González, 27 F.3d at 758 (virtual representation applies when parties to the initial litigation function as the de facto representative of the non-party). Virtual representation requires an identity of interests, actual or constructive notice of the prior litigation, and a weighing of the equities. Id. at 760-61.

---

[13] As described in the Plaintiffs' pleadings, the estimate of current and present harm to dealers is based entirely upon "product line restrictions predicted by the manufacturers." The Alliance Plaintiffs' Memo in Opp., No. 06-70T (D.R.I. filed May 31, 2006) (Doc. #15-1) (emphasis added). See also the Alliance Plaintiffs' Memo in Opp., No. 06-70T, (Affidavit of Donald P. Wisehart) (D.R.I. filed May 31, 2006) (Doc. #23-5) (estimating financial impacts to dealers based on "confidential financial statements pertaining to 31 new motor vehicle dealers in Rhode Island provided by the Manufacturer Plaintiffs," cost increases in each vehicle line and "proscription" of certain models by manufacturers) (emphasis added).

[14] Should the dealer plaintiffs attempt to sustain this case on their own, they must show independent standing, see U.S. v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992), and cannot rely upon harms that are contingent, Berner v. Delahanty, 129 F.3d 20, 24 (1st Cir. 1997) (complainant must show that feared harm is not conjectural or hypothetical); derivative of the actions of third parties not before the court, see AVX Corp., 962 F.2d at 114 (a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); or not traceable to the challenged conduct, Delahanty, 129 F.3d at 24, as compared to other independent factors, such as the price of fuel or current market conditions.



PDF created with pdfFactory trial version www.pdffactory.com

As described above, there can be no doubt that the Rhode Island dealers' interests are virtually indistinguishable from the interests of both the California and Vermont dealers and from the manufacturer plaintiffs. See National Distributors, Inc. v. Teamsters Local Union No. 430, 497 F. Supp. 2d 315, 321-22 (D.R.I. 2007); Gonzalez, 27 F.3d at 760. Likewise, the Rhode Island dealers had actual notice of the prior cases because they are co-Plaintiffs and share counsel with the Alliance Plaintiffs the parties that pursued the Vermont and California actions.

The balance of equities also strongly favors preclusion here, where there is evidence of "tactical maneuvering designed unfairly to exploit technical nonparty status in order to obtain multiple bites of the litigatory apple." Gonzalez, 27 F.3d at 761. As counsel for the Alliance Plaintiffs, GM, and Chrysler freely admitted to Judge Sessions of the Vermont federal district court at a February 2006 conference, Plaintiffs' decision to file multiple suits in different jurisdictions is a deliberate strategy to create a split in the federal circuit courts, thereby enhancing their chances of bringing the case before the United States Supreme Court. Tr. Rule 16 Conf., Feb. 14, 2006, at 35:9-13 (D.Vt. No. 2:05-cv-00302) (statement of Attorney Hemley) (Exhibit D).

The case law in this circuit does not permit the tactic of adding new plaintiffs to avoid preclusion. See Perez-Guzman v. Gracia, 346 F.3d 229, 237 (1st Cir. 2003) (virtual representation does not permit "'simply adding new plaintiffs'" in order to allow "'various members of a coordinated group to bring separate lawsuits in the hope that one member of the group would eventually be successful, benefiting the entire group'").[15] [16] Therefore, it would be

[15] See also Tyus v. Schoemehl, 93 F.3d 449, 457 (8th Cir. 1996) (merely adding new plaintiffs cannot defeat preclusive effect of prior case rejecting claims under federal Voting Rights Act); Petit v. City of Chicago, 766 F. Supp. 607, 613 (N.D. Ill. 1991) (presence of additional white



PDF created with pdfFactory trial version www.pdffactory.com

equitable to bind the local dealers in this case to the results of the identical litigation pursued by their virtual representatives in the California and Vermont district courts.

**D. The Exceptions to Collateral Estoppel Do Not Apply in This Case.**

At the March 26, 2008, scheduling conference, Plaintiffs suggested that two exceptions to the general rules of collateral estoppel shield them from preclusion. See March 26, 2008, Chambers Conference Transcript at p.31 ll. 13-24; p. 22 ll. 20-25; and, p. 22 ll. 1-10. Neither exception applies in this case. First, contrary to Plaintiffs' assertions, collateral estoppel may apply to purely legal determinations on issues of general interest even while not resolved by the highest appellate court that can resolve them. See U.S. v Stauffer Chem. Co., 464 U.S. at 579 (exception for purely legal determinations does not apply to cases that involve the same or closely related subject matter). Second, Rowe v. New Hampshire Motor Transport Ass'n, 128 S.Ct. 989 (2008), in no way abrogates the standard applied by or the reasoning of the Vermont and California courts with respect to Plaintiffs' express preemption challenges. If anything, Rowe affirms the district court's emphasis on discerning Congressional intent in order to construe the terms of EPCA's express preemption provision. Rowe, therefore, does not change

---

police officer plaintiffs deemed insufficient to relitigate challenge to city's employment policies as racially discriminatory in case using the same lawyer as the prior case).

[16] See also In re Sonus Networks, Inc., 499 F.3d 47, 63-64 (1st Cir. 2007) (holding shareholders in successive derivate suits to be in privity for purposes of collateral estoppel); Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252, 265-66 (1st Cir. 1993) (holding that, under doctrine of virtual representation, elder care facility, its owners and individual residents of facility were in privity with other residents who had litigated same claims in separate case because plaintiffs' case "in no sense . . . focus[es] on any *particular resident*"); Tyus, supra, 93 F.3d at 454-58 (virtual representation precludes claims previously litigated by plaintiffs who simply added new plaintiffs to second case); Richards v. Public Serv. Co., 848 F. Supp. 318, 326 (D.R.I. 1994) (stockholder barred under both collateral estoppel and *res judicata* from litigating same claims that other stockholders, including his present attorney with whom he was in privity, had previously litigated).



PDF created with pdfFactory trial version www.pdffactory.com

the legal context and provides to relitigate – for the third time – Plaintiffs' EPCA and CAA challenges.

## IV. CONCLUSION

The Court should find that the collateral estoppel doctrine prevents all the plaintiffs from relitigating these preemption claims and should resolve this action in Rhode Island's favor.

Respectfully submitted,

Defendants
By their Attorney,

PATRICK C. LYNCH
Attorney General

*/s/ Tricia K. Jedele*

Tricia K. Jedele #5958
Special Assistant Attorney General
& Environmental Advocate
150 South Main Street
Providence, RI 02903
(401) 274-4400
(401) 222-3016 (fax)

Defendant-Intervenors
By their Attorney,

*/s/ Cynthia J. Giles*

Cynthia J. Giles, Esq. #5868
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903
(401) 351-1102
(401) 351-1130 (fax)

*Stephen F. Hinchman, Esq.*
*David Bookbinder, Esq.*
*Melissa A. Hoffer, Esq.*
*Matthew F. Pawa, Esq.*

Pro Hac Vice Counsel
for Defendant Intervenors



PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

I hereby certify that on the 8th day of April, 2008, I sent a true copy of the within by electronic means (ECF) to:

Joseph V. Cavanagh, Jr.
jvc@blishcavlaw.com,

Mary C. Dunn
mcd@blishcavlaw.com

Andrew B. Clubok
aclubok@kirkland.com

Kristin E. Rogers
ker@blishcavlaw.com

Stuart C. Drake
sdrake@kirkland.com

Patricia K. Rocha
procha@apslaw.com
dhumm@apslaw.com
jtarantino@apslaw.com

and by regular mail to:

Charles H. Haake
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

Raymond B. Ludwiszewski
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

*/s/ Tricia K. Jedele*



PDF created with pdfFactory trial version www.pdffactory.com