U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

2005 NOV 18 PM 1 28

| | |
|---|---|
| THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS W. TORTI, in his official capacity as Secretary of the Vermont Agency of Natural Resources; JEFFREY WENNBERG, in his official capacity as Commissioner of the Vermont Department of Environmental Conservation; Richard A. VALENTINETTI, in his official capacity as Director of the Vermont Air Pollution Control Division<br><br>Defendants. | Case No. 2:05-cv-304 CLERK<br>BY ______ DEPUTY CLERK<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**[28 U.S.C. 1331, 1343, 2201]** |

Comes now the Association of International Automobile Manufacturers ("AIAM"), and for its Complaint states the following claims for declaratory and injunctive relief against Thomas W. Torti, Secretary of the Vermont Agency of Natural Resources; Jeffrey Wennberg, Commissioner of the Vermont Department of Environmental Conservation; and Richard A. Valentinetti, Director of the Vermont Air Pollution Control Division:

**JURISDICTION AND VENUE**

1. This is an action for declaratory and injunctive relief under the Supremacy Clause in Article VI of the United States Constitution and 42 U.S.C. § 1983 challenging the provisions of a state regulation which is preempted by federal law. The Defendants are the state officers charged with implementing and enforcing the preempted regulation. This Court has jurisdiction to grant the relief sought in this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 2201.

2. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the Defendants perform their official acts in this Judicial District.

## NATURE OF THE ACTION

3. This action seeks to enjoin the Secretary of the Vermont Agency of Natural Resources (the "ANR"), the Commissioner of the Vermont Department of Environmental Conservation (the "DEC"), and the Director of the Vermont Air Pollution Control Division (the "APCD") from implementing and enforcing against members of the Association of International Automobile Manufacturers certain regulations promulgated by the DEC relating to the emission from motor vehicles of carbon dioxide ("$CO_2$"), methane, nitrous oxide and hydrofluorocarbons (the "DEC Regulations").

4. The DEC Regulations set a limit for the fleet-wide average "greenhouse gas" emissions from passenger cars, light-duty trucks, and medium-duty passenger vehicles that are produced and delivered for sale in Vermont for each model year beginning with the 2009 model year. The "greenhouse gas" emissions limit is expressed in terms of grams of "carbon dioxide equivalent" emitted per mile traveled.

5. The DEC Regulations impose on automobile manufacturers emissions and de facto fuel economy standards that are different from standards established by the federal government, and would require automobile manufacturers to develop and implement motor vehicle design and manufacturing changes to meet these Vermont-specific standards. Congress, however, has repeatedly recognized the need for a uniform, nationwide approach for standards that impact the design and manufacture of automobiles, and has, therefore, enacted legislation vesting exclusive authority to regulate such matters with the federal government.

6. Fuel economy and vehicular emissions standards are two such areas in which Congress has vested the federal government with exclusive authority. As explained in greater detail in the specific claims below, Congress has enacted statutory and regulatory frameworks which exclusively occupy the fields of fuel economy and vehicular emissions. The DEC

Regulations impermissibly intrude upon and conflict with the federal regulations in these fields and are therefore preempted by federal law.

7. First, the Energy Policy and Conservation Act of 1975 ("EPCA"), as amended 49 U.S.C. §§ 32901, *et seq.*, grants exclusive authority to the National Highway Traffic Safety Administration ("NHTSA") to regulate the fuel economy of automobiles sold in the United States. Accordingly, EPCA exclusively occupies the field of vehicular fuel economy. Because the emission of $CO_2$ is inexorably tied to the fuel economy of an automobile and the only possible way to reduce the emissions of $CO_2$ from gasoline fueled motor vehicles is to improve fuel economy, the DEC Regulations impermissibly intrude upon federal regulation in the field of vehicular fuel economy, stand in irreconcilable conflict with the national motor vehicle fuel economy program, and are expressly and impliedly preempted by EPCA.

8. Second, the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*, (the "CAA") grants exclusive authority to the United States Environmental Protection Agency ("EPA") to regulate emissions from motor vehicles. The only exceptions to the exclusivity of the federal occupation in this field can be found in Sections 209(b) and 177 of the CAA. Section 209(b) allows the State of California to seek a waiver of Clean Air Act preemption for vehicular emissions standards (provided that certain conditions are met), and Section 177 allows a State to adopt and enforce emissions standards that are identical to those in place in California and for which a waiver has been granted. 42 U.S.C. §§ 7543, 7507. While California has adopted regulations controlling "greenhouse gas" emissions from motor vehicles identical to the regulations adopted by the DEC, California has not obtained a waiver for its regulations. Accordingly, the preemption provision of the CAA expressly prohibits the Defendants from adopting and enforcing the DEC Regulations.

9. To enforce the requirements of federal law, AIAM brings this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief against the implementation and enforcement of the DEC Regulations.

**THE PARTIES**

10. The Association of International Automobile Manufacturers is a not-for-profit trade association of manufacturers, manufacturer-authorized importers, and distributors of motor vehicles manufactured both in and outside of the United States. AIAM is incorporated under the laws of the Commonwealth of Virginia and its principal place of business is located in Arlington, Virginia. One of AIAM's missions is to promote sound laws and regulations in the areas of motor vehicle safety, emissions and fuel economy, and to represent the interests of its member companies in federal and state regulatory proceedings and litigation. AIAM brings this suit on behalf of its members, which include American Honda Motor Company, Inc.; American Suzuki Motor Corporation; Aston Martin Lagonda of North America, Inc.; Ferrari North America, Inc.; Hyundai Motor America; Isuzu Motors America, Inc.; Kia Motors America, Inc.; Maserati North America, Inc.; Mitsubishi Motors North America, Inc.; Nissan North America, Inc.; Peugeot Motors of America, Inc.; Renault, SA; Subaru of America, Inc.; and Toyota Motor North America, Inc. Several of AIAM's members are subject to and will be affected by the regulations adopted by the DEC. AIAM has standing to pursue this action on behalf of its members.

11. Defendant Thomas W. Torti is Secretary of the Vermont Agency of Natural Resources. The Secretary of the ANR is authorized to implement and enforce the DEC Regulations that are the subject of this litigation. This suit is being brought against the Secretary in his official capacity. The Secretary maintains an office in Waterbury, Vermont, and performs his official duties in Waterbury, Vermont.

12. Defendant Jeffrey Wennberg is the Commissioner of the Vermont Department of Environmental Conservation. The Commissioner of the DEC is authorized to implement and enforce the DEC Regulations that are the subject of this litigation. This suit is being brought against the Commissioner in his official capacity. The Commissioner maintains an office in Waterbury, Vermont, and performs his official duties in Waterbury, Vermont.

13. Defendant Richard A. Valentinetti is the Director of the Vermont Air Pollution Control Division. The Director of the APCD is authorized to implement and enforce the DEC Regulations that are the subject of this litigation. This suit is being brought against the Director in his official capacity. The Director maintains an office in Waterbury, Vermont, and performs his official duties in Waterbury, Vermont.

## FACTUAL BACKGROUND

14. The motor vehicle industry is one of the most highly regulated sectors of the United States economy. The authority to enact regulations that impact the design and manufacture of automobiles resides primarily with the federal government because of the enormous burden that would be placed on automobile manufacturers if there were 51 separate bodies of state regulation in these fields. Accordingly, Congress has repeatedly recognized the need for a uniform, nationwide approach to standards that impact the design and manufacture of automobiles, and has enacted legislation vesting exclusive authority to regulate such matters with the federal government. The DEC Regulations implicate two areas in which Congress has vested the federal government with exclusive authority to establish standards that impact the design and manufacture of automobiles: fuel economy and vehicular emissions.

15. As a primary stakeholder in such regulations, AIAM members have long worked hand-in-hand with federal regulators to establish standards that not only meet the national goals

of improving fuel economy and reducing automobile emissions, but also carefully balance other factors such as consumer demand, technological feasibility, and economic practicality.

16. Indeed, AIAM has consistently embraced progressive positions regarding motor vehicle regulation to address the issues of global climate change and fuel economy improvement. AIAM is on record with both the National Academy of Sciences and the National Highway Traffic Safety Administration not opposing improvements in the federal Corporate Average Fuel Economy ("CAFE") program as long as such improvements apply equally to all automakers, are technologically feasible, and provide adequate lead-time for product changes. Moreover, AIAM members have been industry leaders in the introduction of advanced automotive technologies (*e.g.*, hybrid-electric, hydrogen fuel cell, and other alternative fueled vehicles) that both reduce emissions and promote fuel economy. Some of the most fuel efficient, and consequently lowest "greenhouse gas" emitting, vehicles are produced by AIAM member companies.

17. It has also been AIAM's firm position that such regulations must be promulgated at the national level, so that manufacturers do not confront a myriad of conflicting, state-by-state requirements. As set forth in greater detail below, however, the DEC Regulations impose on automobile manufacturers emissions and de facto fuel economy standards that are preempted by federal law, and would require automobile manufacturers to develop and implement motor vehicle design and manufacturing changes specifically to meet these Vermont standards.

**A. The Federal Government's National Regulation of Fuel Economy Through the Federal Energy Policy and Conservation Act**

18. In 1975, Congress passed the Energy Policy and Conservation Act of 1975 ("EPCA"), as amended 49 U.S.C. §§ 32901, *et seq.* EPCA established an automotive fuel economy regulatory program by adding Title V, "Improving Automotive Efficiency," to the Motor Vehicle Information and Cost Saving Act. Title V has been amended from time to time

Case 2:05-cv-00304-wks Document 1-1 Filed 11/18/2005 Page 7 of 23

and codified without substantive change as Chapter 329 of title 49, United States Code. EPCA grants authority to the National Highway Traffic Safety Administration ("NHTSA") to regulate the fuel economy of automobiles sold in the United States.

19. Pursuant to EPCA, NHTSA has promulgated fleet-wide average fuel economy standards that apply to all cars and light trucks sold by a manufacturer in a given model year. These standards are called "corporate average fuel economy" or "CAFE" standards. Pub. L. No. 94-163, § 301, 89 Stat. 871, 902 (1975). Under these standards, an automobile manufacturer can produce and sell any combination of vehicles it chooses, provided that its fleet-wide average fuel economy meets the applicable CAFE standard.

20. The CAFE regulations currently classify motor vehicles into two categories, passenger automobiles and light duty trucks (trucks with Gross Vehicle Weight Ratings ("GVWR") up to 8,500 pounds) and provides for a separate CAFE standard for each category. The CAFE standard for passenger vehicles can be found at 49 C.F.R. §§ 531.5 and is set at 27.5 miles per gallon. The CAFE standard for light trucks can be found at 49 C.F.R. §§ 533.5 and is set at 21.0 miles per gallon for the 2005 model year, and increases to 21.6 and 22.2 miles per gallon for the 2006 and 2007 model years, respectively.

21. NHTSA's regulations require that fuel economy be measured by way of "procedures established by the Administrator of the Environmental Protection Agency." 49 C.F.R. §§ 531.6(a) & 533.6(b). As discussed below, the applicable EPA regulations used for measuring fuel economy are driven by $CO_2$ emissions.

22. The relationship between fuel consumption and $CO_2$ emissions for a given fuel is fixed. This direct linkage is illustrated by how EPA measures fuel economy using the official fuel economy tests. The amount of fuel consumed per mile traveled is not measured directly.

instead, EPA measures the exhaust emissions of hydrocarbons ("HC"), carbon monoxide ("CO"), and $CO_2$ per mile traveled. This method is based upon simple combustion theory. Chemists are able to determine how many atoms of carbon are contained in a gallon of gasoline. The process of combusting fuel and producing energy is accomplished by combining the carbon molecules in the fuel with oxygen. The EPA tests effectively "count" all of the carbon atoms coming out of the motor vehicle in the form of HC, CO, and $CO_2$. After counting the carbon atoms emitted per mile driven, EPA then uses a formula found at 40 C.F.R. § 600.113-93(c), commonly referred to as the carbon balance equation, to calculate the amount of fuel burned per mile driven, and thus the miles per gallon of fuel consumption. Because $CO_2$ is the most prevalent of these emissions, the $CO_2$ component of the EPA formula far outweighs the HC and CO contributions.

23. To ensure national uniformity in fuel economy regulations, EPCA includes a broad express preemption clause at 49 U.S.C. §32919(a). That section provides:

> When an average fuel economy standard prescribed under this chapter [49 U.S.C. §§ 32901, *et seq.*] is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter [49 U.S.C. §§ 32901, *et seq.*].

49 U.S.C. § 32919(a). The NHTSA has stated that the broad scope of this preemption provision is premised on "the need for a uniform, federal system" in regulating the fuel economy of motor vehicles. 67 Fed. Reg. 77015, 77025 (Dec. 16, 2002).

**B. The Federal Government's National Regulation of Motor Vehicle Emissions Through the Clean Air Act**

24. In 1970, Congress amended the CAA to adopt specific nationwide limits on the emission of certain pollutants by new motor vehicles and directed EPA to implement those federal standards. 42 U.S.C. § 7521. These federal emission standards, as amended by Congress

Case 2:05-cv-00304-wks Document 1-1 Filed 11/18/2005 Page 9 of 23

in the CAA Amendments of 1977 and 1990, have reduced the exhaust emissions from new motor vehicles that form ozone by approximately 98 percent from pre-1970 emissions levels.

25. Congress explicitly and deliberately chose uniform nationwide standards to regulate new motor vehicle emissions in the 1970 CAA Amendments. Congress recognized that complying with 51 different motor vehicle emissions requirements would impose an undue burden upon motor vehicle manufacturers. Congress decided that, given the potential burdens on auto manufacturers of conflicting state standards, federal preemption of such variation was appropriate.

26. Accordingly, while Congress allowed States to adopt and enforce their own standards for "stationary" sources – such as factories and power plants Congress enacted section 209(a) of the CAA which expressly preempts state standards for new motor vehicles. Section 209(a) provides:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part [42 U.S.C. §§ 7521, *et seq.*] No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.

42 U.S.C. § 7543(a).

27. Section 209(a) demonstrates Congress's intent to preempt State emissions requirements for new motor vehicles, and its wording is intentionally broad and without limitation: states are preempted from adopting or enforcing *any* standard relating to the control of *any* emissions from new motor vehicle engines. This express preemption remains in effect today.

28. Significantly, Congress worded the preemption provision of Section 209(a) of the CAA more broadly than Section 202(a) of the CAA, which confers EPA with the authority to

regulate certain types of vehicular emissions. While Section 209(a) preempts state regulation of *any* emissions, Section 202(a) provides that

> The Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission ***of any air pollutant*** from any class or classes of new motor vehicles or new motor vehicle engines, ***which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare.***

42 U.S.C. §7521(a)(1) (emphasis added).

29. EPA has concluded that $CO_2$ is not an "air pollutant" that may be regulated under Section 202(a) of the CAA. *See* Notice of denial of petition for rulemaking, *Control of Emissions from New Highway Vehicles and Engines*, 68 Fed. Reg. 52922 (Sept. 8, 2003). That determination has been upheld by the D.C. Circuit. *Massachusetts v. EPA*, 415 F. 3d 50 (D.C. Cir. 2005). Thus, although the discharge of $CO_2$ from motor vehicles is an "emission" under the broad preemption provision of Section 209(a) of the CAA, it is not an emission of "an air pollutant" under Section 202(a).

30. Section 209(b) of the CAA provides for an exception to the broad preemption provision of Section 209(a). That Section provides for a grandfather clause for States that had adopted their own new motor vehicle standards "prior to March 30, 1966," a proviso that deliberately applied only to the State of California. 42 U.S.C. § 7543(b). Thus, pursuant to Section 209(b), California may obtain an exemption from the broad preemption of section 209(a), but only if EPA finds that certain preconditions are met. First, consistent with the rationale underlying this exception, California may only obtain a waiver if its proposed standards are needed "to meet compelling and extraordinary conditions" unique to California. 42 U.S.C. § 7543(b). Second, the proposed standards must be "consistent with section 202(a)" of the CAA.

*Id.* The review process by which EPA determines whether to grant or deny a waiver of preemption under Section 209(b) of the CAA can take several years.

31. Additionally, pursuant to Section 177 of the CAA, any other State "may adopt and enforce for any model year standards relating to control of emissions from new motor vehicles or new motor vehicle engines" provided that "such standards are identical to the California standards for which a waiver has been granted for such model year" and that "California and such State adopt such standards at least two years before commencement of such model year." 42 U.S.C. § 7507.

**C. The DEC Regulations**

32. Pursuant to California Assembly Bill 1493 ("AB 1493"), the California Air Resources Board ("CARB") adopted on September 24, 2004, a resolution approving sweeping new amendments to Title 13 of the California Code of Regulations to create greenhouse gas emissions standards for new motor vehicles sold in California beginning with model year 2009 (the "AB 1493 Regulations"). The emissions controlled by the AB 1493 Regulations are $CO_2$, methane, nitrous oxide and hydrofluorocarbons. California, however, has not received a waiver under Section 209(b) of the CAA for these regulations, nor has California applied for such a waiver. Should California eventually seek a waiver of preemption under Section 209(b) of the CAA, the review process can take several years.

33. The Vermont Department of Environmental Conservation has enacted new greenhouse gas emissions standards for new motor vehicles for inclusion in Vermont's Low Emission Vehicle Program. These DEC Regulations incorporate by reference the greenhouse gas emissions standards previously adopted by CARB in the AB 1493 Regulations. Specifically, Section 5-1103(b) of Subchapter XI of the Air Pollution Control Regulations provides as follows:

> No person, including a manufacturer or dealer, shall deliver for sale or lease, offer for sale or lease, sell or lease, import, acquire, receive, purchase, or rent a new 2009 or subsequent model-year passenger car, light-duty truck, or a medium-duty passenger vehicle in Vermont unless the vehicle is California-certified and complies with the California greenhouse gas exhaust emission standards and meets all other applicable requirements of California Code, Title 13, Section 1961.1 and this Subchapter.

Available at http://www.anr.state.vt.us/air/docs/Rule%20Text.pdf.

34. The DEC Regulations establish four classifications of vehicles: passenger cars (vehicles designed for personal transportation of up to 12 persons), "LDT1s" (light-duty trucks with a loaded vehicle weight of 0-3,750 pounds), "LDT2s" (light-duty trucks with a loaded vehicle weight of 3,751 pounds to a gross vehicle weight of 8,500 pounds), and "MDPVs" (medium-duty passenger vehicles with a gross vehicle weight rating of less than 10,000 pounds). These standards will be enforced by civil penalties on manufacturers assessed at levels designed to ensure compliance with the standards.

35. The rules set near-term standards, phased in from 2009 through 2012, and mid-term standards, phased in from 2013 through 2016, for the emissions of greenhouse gases. The proposed standards are expressed in terms of "carbon dioxide equivalent" emissions, which allow credits for the control of other greenhouse gases in addition to $CO_2$. The standards adopted by the DEC for $CO_2$ equivalent emissions are set forth in a new Section 1961.1 of Title 13 of the California Code of Regulations, which the Vermont DEC Regulations adopt by reference. Subsection (a)(1)(A) of the California regulation provides as follows:

> The fleet average greenhouse gas exhaust mass emission values from passenger cars, light-duty trucks, and medium-duty passenger vehicles that are produced and delivered for sale in California each model year by a large volume manufacturer shall not exceed:

| FLEET AVERAGE GREENHOUSE GAS EXHAUST MASS EMISSION REQUIREMENTS FOR PASSENGER CAR, LIGHT-DUTY TRUCK, AND MEDIUM-DUTY PASSENGER VEHICLE WEIGHT CLASSES (4,000 mile Durability Vehicle Basis) | | |
|---|---|---|
| *Model Year* | *Fleet Average Greenhouse Gas Emissions (grams per mile $CO_2$-equivalent)* | |
| | *All PCs; LDTs 0-3750 lbs. LVW* | *LDTs 3751 lbs. LVW - 8500 lbs. GVW; MDPVs* |
| 2009 | 323 | 439 |
| 2010 | 301 | 420 |
| 2011 | 267 | 390 |
| 2012 | 233 | 361 |
| 2013 | 227 | 355 |
| 2014 | 222 | 350 |
| 2015 | 213 | 341 |
| 2016+ | 205 | 332 |

Cal. Code Regs. tit. 13, § 1961.1(a)(1)(A).

**D. The DEC Regulations Conflict With Federal Law**

36. Carbon dioxide is ubiquitous, making up about one percent of the volume of dry air. In addition to being exhaled by humans and other animals when converting food and oxygen into energy and living tissue, carbon dioxide is released into the atmosphere when carbon-containing fossil fuels such as oil, natural gas, and coal are burned in air. These fossil fuels provide the power source for nearly all modes of transportation and approximately 70% of all electricity generated in the United States. Carbon dioxide accounts for nearly 95% of emissions identified by the DEC as greenhouse gas emissions.

37. The amount of $CO_2$ emitted by combustion depends only on the quantity and type of fuel burned. For example, burning a gallon of gasoline results in the emission of roughly twenty pounds of $CO_2$, regardless of the characteristics of the vehicle that burned the fuel.

38. After being emitted into the air from biological or manmade sources, $CO_2$ does not remain localized and close to the earth's surface. Rather, it disperses evenly throughout the atmosphere, such that emissions of $CO_2$ in Vermont have no greater impact in Vermont than they

do elsewhere in the United States or indeed the world. Conversely, emissions of $CO_2$ in Asia have as much of an impact in Vermont as do $CO_2$ emissions from sources in Vermont.

39. The only way to reduce the amount of $CO_2$ emitted from a gasoline fueled motor vehicle is to make it burn less fuel per mile driven. In contrast to other emissions from an automobile, no technology currently exists or is under development that can capture or reduce emissions of $CO_2$ from an automobile. Thus, a vehicle with higher fuel economy emits less $CO_2$ per mile traveled in direct proportion to the increase in its fuel economy.

40. Accordingly, as set forth above, rating motor vehicles based on the grams of $CO_2$ emitted per mile driven is precisely the manner by which the NHTSA measures compliance with the CAFE performance standards pursuant to EPCA. Moreover, the Vermont Greenhouse Regulations prescribe the exact same test for measuring $CO_2$ emissions as is utilized by the NHTSA in enforcing the CAFE program.

41. The DEC Regulations, therefore, set de facto fuel economy standards for motor vehicles sold in the State of Vermont. However, by enacting EPCA, Congress has granted exclusive authority to the NHTSA to regulate the fuel economy of automobiles sold in the United States through the CAFE program. The CAFE program exclusively occupies the field of vehicular fuel economy, thus leaving no room for States to act. The DEC Regulations impermissibly intrude upon this field.

42. Congress's intent that EPCA exclusively occupy the field of vehicular fuel economy is buttressed by the broad preemption provision of EPCA set forth at 49 U.S.C. §32919(a), which forbids states from "adopt[ing] or enforc[ing] a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter [49 U.S.C. §§ 32901, *et seq.*]." Because the

DEC Regulations are "related to fuel economy standards," they are expressly preempted by EPCA.

43. Moreover, the DEC Regulations conflict with the CAFE standards because there are significant differences between the two which place them at odds with each other. First, the Regulations require much stricter fuel economy in terms of grams of $CO_2$ emitted per mile than the CAFE standards. Using the formula set forth in 40 C.F.R. § 600.113-93 for converting grams of $CO_2$ emitted per mile into miles per gallon of gasoline, the DEC Regulations impose fuel economy standards for the passenger car/LDT1 classification as follows:

| Model Year | Cars plus LDT1s |
|---|---|
| 2009 | 27.4 |
| 2010 | 29.4 |
| 2011 | 33.2 |
| 2012 | 38.0 |
| 2013 | 39.0 |
| 2014 | 39.9 |
| 2015 | 41.6 |
| 2016 | 43.2 |

By way of comparison, the current CAFE standard for automobiles for model years 2009 and beyond is 27.5 mpg, unless amended by NHTSA or Congress. Thus, for example, if an automobile manufacturer has a fleet-wide fuel economy average of 28 miles per gallon for its passenger cars in 2010, it will be in full compliance with the CAFE standard, but in violation of the DEC Regulations.

44. Second, the DEC Regulations differ significantly from the CAFE standards in how the regulations classify motor vehicles. The CAFE standards have separate categories for

passenger automobiles and light-duty trucks (trucks with GVWR up to 8,500 pounds). The Vermont regulations, however, split the light-duty truck category into two groups. The smaller light trucks ("LDT1s") are combined with passenger cars for calculating fleet-wide emissions. All other trucks subject to the rule ("LDT2s") are placed in a separate category and classified together with certain heavier vehicles, called Medium Duty Passenger Vehicles ("MDPVs"), which are not regulated under the CAFE standards. This difference in classification will have a significant impact on the fleet-wide average for most vehicle manufacturers. For example, combining smaller light duty trucks with automobiles will have the effect of increasing fleet-wide emissions above the levels achieved if passenger automobiles were categorized alone.

45. Accordingly, because the DEC Regulations set limits for the emission of $CO_2$ from motor vehicles, and because the only feasible way to reduce the emissions of $CO_2$ from motor vehicles is to improve fuel economy, the DEC Regulations stand in direct conflict with federal law, and interfere with the uniform national motor vehicle fuel economy program.

46. Indeed, NHTSA agrees that any "state law that seeks to reduce motor vehicle carbon dioxide emissions is both expressly and impliedly preempted" by EPCA. *Average Fuel Economy Standards for Light Trucks*, 70 Fed. Reg. 51414-01, at 51457 (Aug. 30, 2005). As NHTSA recently stated:

> Since the way to reduce carbon dioxide emissions is to improve fuel economy, a state regulation seeking to reduce those emissions is a "regulation related to fuel economy standards or average fuel economy standards."
>
> Further, such a regulation would be impliedly preempted, as it would interfere with our implementation of the CAFE statute. For example, it would interfere the careful balancing of various statutory factors and other related considerations, as contemplated in the conference report on EPCA, we must do in order to establish average fuel economy standards at the maximum feasible level. It would also interfere with our effort to reform CAFE so to achieve higher fuel savings, while reducing the risk of adverse economic and safety consequences.

*Id.*

47. The Environmental Protection Agency agrees that the regulation of $CO_2$ emissions from motor vehicles amounts to a fuel economy standard, and therefore falls under the purview of NHTSA. *See Notice of Denial of Petition For Rulemaking*, 68 Fed. Reg. 52922, 52929 (Sept. 8, 2003) ("Congress has not authorized the Agency to regulate $CO_2$ emissions from motor vehicles to the extent such standards would effectively regulate car and light truck fuel economy, which is governed by a comprehensive statute administered by DOT.")

48. The DEC Regulations also conflict with the Federal CAA, which vests EPA with the exclusive authority to regulate emissions from motor vehicles. In order to ensure national uniformity in the regulation of vehicular emissions, Congress enacted the broad preemption provision found in Section 209(a) of the CAA, which preempts state regulation relating to the control of any emissions from new motor vehicles or engines. The only exceptions to federal exclusivity are the provision of Section 209(b) of the CAA which allows the State of California to obtain a waiver for its own motor vehicle emissions standards (provided certain conditions are met), and the provision of Section 177 which allows other states to adopt and enforce California standards for which a waiver has been granted. California has not obtained a waiver for its AB 1493 Regulations upon which the DEC Regulations are based, nor has California applied for such a waiver. Should California eventually seek a waiver of preemption under Section 209(b) of the CAA, the review process can take several years. Nevertheless, contrary to the provisions of Sections 209 and 177 of the CAA, the Defendants have adopted the DEC Regulations, and unless enjoined by this Court will enforce those Regulations to the detriment of AIAM's members.

49. Moreover, California is not entitled to a waiver of preemption under the CAA for the AB 1493 Regulations because carbon dioxide does not cause localized environmental

impacts, as do the pollutants for which California has previously obtained waivers. Rather, $CO_2$ disperses evenly throughout the atmosphere, such that emissions of $CO_2$ in California have no greater impact in California than they do elsewhere in the United States or indeed the world. Accordingly, the AB 1493 Regulations are not necessary "to meet compelling and extraordinary conditions" specific to California. 42 U.S.C. § 7543(b). Moreover, because $CO_2$ is not "an air pollutant" subject to regulation under Section 202(a) of the CAA, the AB 1493 Regulations are not "consistent with section 202(a)" of the CAA. *Id.*

50. The Defendants' violation of federal law will impose substantial and unnecessary costs on AIAM members because the DEC Regulations will compel vehicle manufacturers to take immediate steps to try to comply with the Vermont standards. The first model year to which the Defendants' rule would apply is the 2009 model year, which begins as early as January 2, 2008, under Vermont and federal regulations. Automobile manufacturers will require a substantial lead time in order to develop and implement the technological and design changes necessary to meet the Vermont standard.

51. AIAM and its members have no adequate remedies at law for the foregoing elements of damage and injury. To the extent that the monetary value of such injuries could be ascertained, the principles of sovereign and official immunity would prevent AIAM and its members from recovering such losses from the Defendants. Only this Court's exercise of its equitable powers can protect AIAM and its members from irreparable harm.

52. The balance of hardships and the public interest favor granting the equitable relief requested. Invalidating the unlawful DEC Regulations will result in no significant adverse consequences for the Defendants or the general public, but will avoid imposing substantial irreparable harm to AIAM and its members.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preemption Under The Federal Energy Policy And Conservation Act**

53. AIAM realleges and incorporates each and every paragraph set forth above, as though fully set forth herein.

54. EPCA expressly preempts any State from adopting or enforcing any "law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under" EPCA. 49 U.S.C. § 32919.

55. The DEC Regulations, which set maximum fleet-wide average levels of grams of $CO_2$ emitted per mile for passenger automobiles and light duty trucks, are "related to fuel economy standards and average fuel economy standards," and are therefore preempted under 49 U.S.C. § 32919(a).

56. Moreover, the National Highway Traffic Safety Administration exclusively occupies the field of fuel economy regulation. The DEC Regulations impermissibly intrude on that field by establishing fleet-wide limits on $CO_2$ emission per mile, and thereby regulating the fuel economy of motor vehicles sold in Vermont.

57. The DEC Regulations also stand as an obstacle to the accomplishment and execution of the full purposes of the objectives of Congress in enacting EPCA, and frustrate the full effectiveness of the CAFE program.

58. AIAM's members will be actually and irreparably injured if the DEC Regulations are not declared unlawful and if the Defendants are not enjoined from implementing and enforcing those regulations.

59. An actual and judicially cognizable controversy exists between AIAM and the Defendants regarding whether the DEC Regulations are preempted by EPCA. AIAM contends

that the DEC Regulations are preempted by EPCA and cannot be enforced. The Defendants are presently implementing those regulations by undertaking steps to permit them to enforce the rule under Vermont statutes that create civil liability for noncompliance with the rule, and will enforce it to the detriment of AIAM and its members.

60. To redress the violations of federal law and the interference with the rights of AIAM and its members, and pursuant to 28 U.S.C. §§ 1331,1343, 2201 and other provisions of law, including 42 U.S.C. §§ 1983, 1988, AIAM requests a declaration that the DEC Regulations are preempted by EPCA and unenforceable.

61. The Defendants are now and will continue to implement the DEC Regulations in violation of federal law unless enjoined by this Court from doing so. AIAM is therefore also entitled to injunctive relief restraining and redressing these violations of federal law under 42 U.S.C. §§ 1983, 1988 and other provisions of law.

## SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preemption Under The Federal Clean Air Act

62. AIAM realleges and incorporates each and every paragraph set forth above, as though fully set forth herein.

63. Section 209(a) of the CAA expressly prohibits any State from adopting or attempting to enforce "any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a). Section 209(a) also expressly prohibits any state from requiring "certification, inspection or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment." *Id.*

64. The DEC Regulations are a "standard related to the control of emissions from new motor vehicles" and are therefore preempted by section 209(a) of the CAA, 42 U.S.C. § 7543(a).

65. The only exceptions to federal exclusivity are the provision of Section 209(b) of the CAA which allows the State of California to obtain a waiver for its own motor vehicle emissions standards (provided certain conditions are met), and the provision of Section 177 which allows other states to adopt and enforce California standards for which a waiver has been granted. The DEC Regulations seek to adopt California's AB 1493 Regulations. California, however, has not obtained a waiver for its AB 1493 Regulations, nor has California applied for such a waiver. Should California eventually seek a waiver of preemption under Section 209(b) of the CAA, the review process can take several years. Nevertheless, contrary to the provisions of Sections 209 and 177 of the CAA, the Defendants have adopted the DEC Regulations, and unless enjoined by this Court will enforce those Regulations to the detriment of AIAM's members.

66. AIAM's members will be actually and irreparably injured if the DEC Regulations are not declared unlawful and if the Defendants are not enjoined from implementing and enforcing those regulations.

67. An actual and judicially cognizable controversy exists between AIAM and the Defendants regarding whether the DEC Regulations are preempted by the CAA. AIAM contends that the DEC Regulations are preempted by the CAA and cannot be enforced. The Defendants are presently implementing those regulations by undertaking steps to permit them to enforce the rule under Vermont statutes that create civil liability for noncompliance with the rule, and will enforce it to the detriment of AIAM and its members.

68. To redress the violations of federal law and the interference with the rights of AIAM and its members, and pursuant to 28 U.S.C. §§ 1331,1343, 2201 and other provisions of law, including 42 U.S.C. §§ 1983, 1988, AIAM requests a declaration that the DEC Regulations are preempted by the CAA and unenforceable.

69. The Defendants are now and will continue to enforce the DEC Regulations in violation of federal law unless enjoined by this Court from doing so. AIAM is therefore also entitled to injunctive relief restraining and redressing these violations of federal law under 42 U.S.C. §§ 1983, 1988 and other provisions of law.

**PRAYER FOR RELIEF**

WHEREFORE, AIAM respectfully requests that this Court enter the following relief:

A. A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the DEC Regulations violate federal law in the manner alleged above.

B. Preliminary and permanent injunctions, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining the Defendants from implementing or enforcing the DEC Regulations, or any substantially similar regulation.

C. An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other provisions of federal law.

D. Such other relief available under federal law that may be considered appropriate under the circumstances, including other fees and costs of this action to the extent allowed by federal law.

DATED: November 18, 2005

Respectfully submitted,

R. Jeffrey Behm

RAYMOND B. LUDWISZEWSKI
CHARLES H. HAAKE, SBN 190178
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. NW
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Of Counsel

R. JEFFREY BEHM
SHEEHEY FURLONG & BEHM P.C.
30 Main Street / P.O. Box 66
Burlington, VT 05402-0066
Telephone: (802) 864-9891
Facsimile: (802) 864-6815

Attorneys for Association of International
Automobile Manufacturers

70332729_1.DOC

F:\WPDOCS\A\Ass'n of Internat'l Auto Manufacturers\Pleadings\Complaint.DOC