# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF RHODE ISLAND

LINCOLN-DODGE, INC.; SMITHFIELD       :
CHRYSLER JEEP, INC.; SIMON CHEVROLET-  :
BUICK, LTD.; PAUL MASSE CHEVROLET,     :
INC.; PAUL MASSE PONTIAC-CADILLAC-GMC, :
INC.; DELUXE AUTO SALES, INC.; TASCA   :
AUTOMOTIVE GROUP, INC.; HURD           :
CHEVROLET, INC.; HURD BUICK-PONTIAC-   :
GMC TRUCK, INC.; ALLIANCE OF           :
AUTOMOBILE MANUFACTURERS;              :
DAIMLERCHRYSLER CORPORATION; and       :
GENERAL MOTORS CORPORATION,            :
                                       :
                Plaintiffs,            :
                                       :  Case No. 06-70T
          v.                           :
                                       :
W. MICHAEL SULLIVAN, in his official   :
capacity as Director of the Rhode      :
Island Department of Environmental     :
Management,                            :
                                       :
                Defendant.             :


                                       **Consolidated with**

THE ASSOCIATION OF INTERNATIONAL       :
AUTOMOBILE MANUFACTURERS               :
                                       :
                Plaintiff,             :
                                       :
          v.                           :  Case No. 06-69T
                                       :
W. MICHAEL SULLIVAN, in his Official   :
Capacity as Director of the Rhode      :
Island Department of Environmental     :
Management,                            :
                                       :
                Defendant.             :

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

ERNEST C. TORRES, Senior U.S. District Judge.

Two automobile manufacturers; two manufacturers' associations; and a number of Rhode Island automobile dealers brought these consolidated actions for declaratory judgment against the Rhode Island Department of Environmental Management ("RIDEM")[1] seeking a declaration that Rhode Island Air Pollution Control Regulation 37 ("Regulation 37" or the "Rhode Island regulation"), which sets greenhouse gas emissions standards for new automobiles, is invalid because both it and the California regulation (the "CARB Regulation") on which it is modeled have been preempted by the Energy Policy and Conservation Act of 1975, ("EPCA"), 49 U.S.C. §§ 32901-32919, and the Federal Clean Air Act,("CAA"), 42 U.S.C. §§7401-7671(q), as amended in 1990.

RIDEM has moved for judgment on the pleadings contending that the plaintiffs' claims are barred by the doctrine of issue preclusion, also known as collateral estoppel, because the preemption issues raised were decided in previous cases brought by

---

[1] The automobile manufacturers are General Motors and DaimlerChrysler, and the two associations are the Alliance of Automobile Manufacturers ("AAM") and the Association of International Automobile Manufacturers ("AIAM"). W. Michael Sullivan is named in his capacity as Director of RIDEM. In addition, the Natural Resources Defense Council, Sierra Club, Conservation Law Foundation, and Environmental Defense have intervened as party defendants.

1

the plaintiff manufacturers and associations in United States District Courts for the Districts of Vermont and California.

For the reasons hereinafter stated, the defendants' motion for judgment on the pleadings is granted with respect to the manufacturers and associations but is denied with respect to the dealers.

### Background

### The Clean Air Act

The CAA requires the Administrator of the Environmental Protection Agency ("EPA") to adopt regulations establishing standards applicable to the emission of air pollutants from new motor vehicles. 42 U.S.C. § 7521(a)(1). The CAA expressly preempts the adoption or enforcement of different standards by any state, 42 U.S.C. §7543(a), except that California is permitted to promulgate more stringent standards if it, first, obtains a waiver from EPA. 42 U.S.C. §7543(b)(1). The CAA also provides that in the event that California obtains such a waiver, other states may adopt regulations identical to California's. 42 U.S.C. §7507.

### The Energy Policy and Conservation Act ("EPCA")

EPCA, 49 U.S.C. §§32901-32919, establishes Corporate Average Fuel Economy ("CAFE") standards that require a manufacturer's fleet of new motor vehicles to average, at least, 27.5 miles per gallon. 49 U.S.C. § 32902(b). In December 2007, Congress passed the Energy Independence and Security Act, Pub. L. 110-140, 121 Stat. 1492

(2007), which increases the CAFE mileage requirements beginning with the 2011 model year.

Like the CAA, EPCA contains a preemption provision that prohibits states from "adopt[ing] or enforce[ing] a law or regulation related to fuel economy standards" for new motor vehicles. 49 U.S.C. § 32919(a). Unlike the CAA, EPCA does not contain a waiver provision.

<u>California's Waiver Application</u>

In December 2005, California applied for a CAA waiver with respect to the CARB Regulation which establishes more stringent standards for emissions of "greenhouse gases" that are defined to include carbon dioxide, methane, nitrous oxide and hydro fluorocarbons. Cal. Code Regs. tit. 13 §1961.1. The CARB Regulation provided that it would take effect beginning with the 2009 model year.

Before EPA issued a decision with respect to California's waiver application, Rhode Island and several other states promulgated regulations that were virtually identical to the CARB Regulation. RIDEM concedes that it cannot enforce the Rhode Island Regulation unless California's waiver application is granted.

After the Rhode Island Regulation was promulgated, EPA denied California's waiver application. California's petition for review of the denial is pending before the Court of Appeals for the D.C.

Circuit.   State of California v. EPA, No. 08-1178 (D.C. Cir. September Term 2008).

The Previous Decisions

Before this action was commenced, the plaintiff manufacturers and the plaintiff associations, together with a number of automobile dealers located in California and Vermont respectively, brought similar lawsuits in the United States District Courts for the Eastern District of California and the District of Vermont (the "previous cases"). The plaintiffs in those cases alleged that California's CARB Regulation and a Vermont regulation modeled on it were preempted by EPCA and the CAA.

1.   **The Vermont Decision**

The Vermont case was decided first. After a sixteen day bench trial, the Court issued a written decision rejecting the plaintiffs' EPCA preemption claim for several reasons. Green Mountain Chrysler Plymouth Dodge Jeep, et al. v. Crombie, 508 F.Supp.2d 295 (D.Vt. 2007).

First, the Court held that a regulation promulgated pursuant to a waiver specifically authorized by federal law would not be a state law subject to EPCA preemption. Green Mountain, 508 F. Supp. 2d at 343-350.

The Green Mountain Court also held that, even if the CARB regulation were treated as a state law, it would not be preempted by EPCA because greenhouse gas emissions standards do not "relate

4

to" fuel economy standards or otherwise conflict with the purposes and objectives of EPCA. Id. at 350-355, 398. That holding was based on findings that greenhouse gas emissions can be reduced without increasing vehicle mileage; that such reductions were technologically feasible; and that any effect that reductions might have on fuel economy would be only incidental.

With respect to CAA preemption, the Vermont Court found that the statute did not prohibit mere adoption of the CARB standards; and that enforcement was a moot question because the standards could not be enforced unless California obtained a waiver. Id. at 343 n. 50.

Accordingly, judgment was entered against the plaintiff manufacturers, the plaintiff associations, and the Vermont dealers who joined in that action. An appeal from that judgment is pending before the Second Circuit. Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie, Nos. 07-4342 and 07-4360 (D. Vt. filed Oct. 5, 2007)

### 2. The California Decision

After the Vermont case was decided, the District Court for the Eastern District of California entered summary judgment against the plaintiff manufacturers, the plaintiff associations and the California dealers who joined in that action. Central Valley Chrysler-Jeep, Inc. et al. v. Goldstene, 529 F.Supp.2d 1151 (E.D.Cal. 2007). The Court held that EPCA did not preempt the CARB

Regulation because the undisputed facts established that at least partial compliance could be achieved in ways that would not affect fuel economy standards and that any impact on fuel economy was only incidental and did not amount to <u>de facto</u> regulation of vehicle mileage requirements. <u>Central Valley Chrysler-Jeep</u>, 529 F.Supp.2d at 1176.

The California court also dismissed the CAA claim as moot. <u>Central Valley Chrysler-Jeep, Inc. v. Witherspoon</u>, 2007 WL 135688 (E.D. Cal. Jan. 16, 2007). The California court rejected the plaintiffs' claim that mere <u>adoption</u> of the Regulation violated the CAA and, since it, previously, had enjoined <u>enforcement</u> of the CARB regulation until a waiver was obtained, the Court dismissed the CAA claim as moot. <u>Central Valley Chrysler-Jeep</u>, 2008 WL 2600786 at *3-4 (E.D. Cal. June 24, 2008)

<u>This Case</u>

In this case, the plaintiffs claim that California's CARB Regulation and, by extension, the Rhode Island regulation that tracks it are preempted by EPCA and the CAA.[2] The defendants argue that these issues were raised and decided in the Vermont and California cases and that the doctrine of issue preclusion bars the plaintiffs from relitigating them.

---

[2]Additional claims made by the plaintiffs have been voluntarily dismissed without prejudice.

## Standard of Review

The standard for ruling on a Rule 12(c) motion for judgment on the pleadings is the same as the standard for ruling on a Rule 12(b)(6) motion to dismiss. Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). Thus, a motion for judgment on the pleadings may be granted only if it appears that the plaintiffs cannot prove any set of facts entitling them to relief. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).

In ruling on a motion for judgment on the pleadings, the Court takes the well pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 489-90 (1st Cir. 1996). In addition, the Court may take judicial notice of pleadings, filings, and other relevant documents filed in related cases. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006)("[C]ourt may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice.")

## Analysis

I.  Issue Preclusion in General

A.  Overview

The doctrine of issue preclusion generally bars a litigant from raising issues of fact or law that were the subject of a final

judgment in a previous case to which the litigant was a party. United States v. Mendoza, 464 U.S. 154, 158, 104 S. Ct. 568, 571, 78 L. Ed. 2d 379 (1984)("[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."); Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 973, 59 L. Ed. 2d 210 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.")(citing Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979)). Like the related doctrine of claim preclusion, issue preclusion prevents parties "from contesting matters that they have had a full and fair opportunity to litigate [and] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 153-54, 99 S. Ct. at 973-974; see also Mendoza, 464 U.S. at 158, 104 S.Ct. at 571.

In this circuit, issue preclusion applies where: "(1) The issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding

final judgment; and (4) the determination of the issue was essential to the judgment." Ramallo Bros. Printing, Inc. v. El Dia, Inc. 490 F.3d 86, 90 (1st Cir. 2007)(citing Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997)).

**B.   Factors in Applying Issue Preclusion**

Whether and to what extent issue preclusion applies depends, in part, on the type of issue preclusion invoked and on whether it is invoked against the government or a private party.  Thus, at least, in the case of non-mutual issue preclusion[3], courts are less inclined to apply issue preclusion when it is invoked offensively to bar a defendant from asserting a defense that raises an issue unsuccessfully litigated by the defendant in a previous case than when it is invoked defensively to bar a plaintiff from raising an issue that the plaintiff unsuccessfully litigated in a previous case.  See Acevedo-Garcia v. Monroig, 351 F.3d 547, 574 (1st Cir. 2003)(recognizing Supreme Court's special concerns regarding offensive use of non-mutual collateral estoppel).  See also United States v. Mendoza, 464 U.S. at 159, n. 4, 104 S. Ct. at 571, n.4, 78 L. Ed. 2d 379 (describing the difference between the "offensive" and "defensive" uses of issue preclusion.)

In addition, the Supreme Court has held that nonmutual issue preclusion may not be applied against the government because "[t]he conduct of government litigation . . . is sufficiently different

---

[3]Issue preclusion is referred to as non-mutual where the party waiving it is not bound by the prior judgment.

from the conduct of private civil litigation so that what might otherwise be economy interests underlying a broad application of collateral estoppel are outweighed by the constraints which peculiarly affect the government." Mendoza, 464 U.S. at 162, 104 S. Ct. at 573-574.  The Mendoza Court observed that, "[u]nlike a private litigant who generally does not forego an appeal if he believes that he can prevail, the Solicitor General considers a variety of factors. . . [and] application of nonmutual estoppel against the government would force the Solicitor General to abandon those prudential concerns and to appeal every adverse decision in order to avoid foreclosing further review." Mendoza, 464 U.S. at 161, 104 S. Ct. at 573.  The Mendoza Court also noted that "[g]overnment litigation frequently involves legal questions of substantial public importance. . .," 464 U.S. at 160, 104 S. Ct. at 572, and "allowing nonmutual collateral estoppel against the government. . . would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." Id., 464 U.S. at 160, 104 S.Ct. at 572.

II.  The EPCA Preemption Issue

In the previous cases, it was held that California's CARB Regulation was not preempted by EPCA and it is clear that those holdings were essential to the judgments.  Nevertheless, the plaintiffs argue that they are not barred from relitigating the EPCA preemption issue because it presents a "pure legal question"

to which issue preclusion does not apply and because applying issue
preclusion would freeze development of the law with respect to
"important national issues." Neither argument is persuasive.

A.   The Unmixed Question of Law Exception

It is true that a court may decline to apply issue preclusion
where the issue presented is an "unmixed question of law" _and_ the
two cases "involv[e] unrelated subject matter." _Mendoza_, 464 U.S.
163 n.7, 104 at 574 n.7 (citing _Montana v. United States_, 440 U.S.
at 162, 99 S.Ct at 978)).   The rationale for that exception is
that, in such cases, foreclosing reconsideration "would not aid
judicial economy."   _See_ _Pharm. Care Mgmt. Ass'n. v. Dist. of
Columbia_, 522 F.3d 443, 447, 380 U.S.App.D.C. 418, 422 (D.C. Cir.
2008).

By its terms, this exception does not apply where the issues
involve "mixed questions of law and fact or .   .   . pure
questions of fact." _Pharm. Care Mgmt. Assn._, 522 F.3d at 446
(citing _United States v. Stauffer Chem. Co._, 464 U.S. 165, 170-71,
104 S. Ct. 575, 78 L. Ed. 2d 388 (1984); _Montana v. United States_,
440 U.S. at 162-63, 99 S. Ct. at 978, 59 L. Ed. 2d 210; _United
States v. Moser_, 266 U.S. 236, 242, 45 S. Ct. 66, 69 L. Ed. 262
(1924)).   Nor does the exception apply where the two cases are
closely related because "'it is unfair to the winning party and an
unnecessary burden on the courts to allow repeated litigation of
the same issue in what is essentially the same controversy, even if
the issue is regarded as one of law.'" _United States v. Stauffer_

11

Chem. Co., 464 U.S. at 171, 104 S. Ct. at 579 (quoting Restatement (Second) of Judgments §28 comment b (1982)).

In this case, neither of the requirements necessary to trigger the exception has been satisfied.

### 1.   The Unmixed Question of Law Requirement

In order to decide whether EPCA preempts the CARB Regulation and the Rhode Island regulation that tracks it, one, first, must determine whether, as the plaintiffs maintain, the CARB standards amount to de facto regulation of mileage requirements.  As already noted, both the Vermont and California courts answered that question in the negative.

Furthermore, both holdings were based on factual findings that reducing greenhouse gas emissions did not necessarily require increased fuel economy and that any effect that the CARB standards may have on vehicle mileage would be only incidental.  Green Mountain, 508 F.Supp.2d at 353 (finding that "multiple approaches, with various levels of fuel economy, allow compliance with the standard"); Central Valley Chrysler-Jeep, 529 F. Supp. 2d at 1158 (concluding that compliance "can be at least partially achieved through changes that are not directly reflected in fuel economy improvements measured in miles-per-gallon").  Consequently, the issue raised by the plaintiffs, and previously decided by both the Vermont and California courts, is not an "unmixed question of law" but, rather, it is a mixed question of law and fact.

## 2.    The Unrelatedness Requirement

Even if the EPCA preemption issue were viewed as an "unmixed question of law," this case cannot be described as "unrelated" to the Vermont and California cases.  The Vermont and California cases were brought contemporaneously and shortly before this case. Moreover, all three cases were brought by the same manufacturers and associations; based on essentially the same facts; challenging the same standards for the same reasons; alleging the same harm and seeking the same relief.

In short, this case clearly involves the same "subject matter" as the previous cases; and, therefore, the plaintiff manufacturers and associations are precluded from relitigating the EPCA preemption issue that they had a full and fair opportunity to litigate in those cases.  See Montana, 440 U.S. at 153-154, 99 S. Ct. at 974.  As the Supreme Court has said:

> "[W]hen the claims in two separate actions between the same parties are the same or are closely related. . .  it is not ordinarily necessary to characterize an issue as one of fact or of law for the purpose of issue preclusion. . .  In such a case, it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy even if the issue is regarded as one of law.'  Stauffer, 464 U.S. at 171, 104 S.Ct. at 579 (quoting Restatement (Second) of Judgments §28 comment b (1982)).

B.    Mutuality and Public Concern

The plaintiffs argue that issue preclusion should not be applied in this case because it is nonmutual and it would freeze the development of the law with respect to "important national issues."  However, that argument rests on two erroneous premises.

13

1.    Mutuality

The fact that the defendants were not parties to the previous cases does not prevent them from invoking issue preclusion against the plaintiffs who were parties because the Supreme Court has made it clear that, at least in "disputes over private rights between private litigants," issue preclusion applies regardless of whether it is mutual or nonmutual. <u>Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 349, 91 S.Ct. 1434, 1453, 28 L. Ed. 2d 788 (1971). <u>See</u> <u>Mendoza</u>, 464 U.S. at 158-159, 104 S.Ct. at 571; <u>Willis v. Fournier</u>, 418 F.Supp. 265, 266 (M.D.Ga. 1976), aff'd, 537 F.2d 1142 (5th Cir. 1976)("The federal principle of collateral estoppel precludes re-litigation of an adversely decided issue by a party who has once had a full and fair opportunity to litigate the issues, regardless of whether his present adversary was a party to the previous lawsuit."); <u>Ackerman v. American Airlines, Inc.</u>, 924 F. Supp. 749, 752 (N.D. Tex. 1995)(non-mutual defensive collateral estoppel "may apply regardless of the fact that the defendant was not a party to the prior suit, as long as the plaintiff is the same.")

In <u>Mendoza</u>, the Court carved out a limited exception to that rule by holding that nonmutual collateral estoppel cannot be applied against the <u>government</u> but the <u>Mendoza</u> Court clearly did not state, or even suggest, that the exception extended to private litigants, as well. Indeed, as already noted, the <u>Mendoza</u> Court based its decision on what it identified as several important

14

differences between litigation conducted by the government and litigation conducted by private parties. The <u>Mendoza</u> Court cited various "prudential" and "institutional" considerations unique to the government and pointed out that "[g]overnment litigation frequently involves legal questions of substantial public importance . . . [and that] many constitutional questions can arise only in the context of litigation to which the government is a party." <u>Mendoza</u>, 464 U.S. at 159-60, 104 S.Ct. at 568.

2.   Matters of "Public Concern"

In support of the plaintiffs' argument that barring them from relitigating the EPCA preemption issue would freeze development of the law with respect to "important national issues," the plaintiffs rely upon language in the Restatement (Second) of Judgments and decisions by several courts to the effect that the public interest in relitigating an issue may be a factor in deciding whether collateral estoppel should be applied. <u>See</u> Restatement (Second) of Judgments, §29(7) (1982); <u>see</u> <u>Pharm. Care Mgmt. Ass'n v. Dist. of Columbia</u>, 522 F.3d 443 (D.C. Cir. 2008); <u>Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.</u>, 475 F. 3d 1080, 1086 (9th Cir. 2007). However, that argument is not convincing for several reasons.

First, the Supreme Court has recognized the public interest in relitigating an issue as a factor that may make issue preclusion inappropriate only in cases where issue preclusion has been asserted against the <u>government</u>. <u>Mendoza</u>, 464 U.S. at 160, 104 S. Ct. at 573. In this case, issue preclusion is being invoked by a

governmental agency against private business entities. The
distinction is important because the public interest in permitting
the government to relitigate issues on which it, previously, was
unsuccessful presumably derives from the fact that the government
litigates on behalf of the public. By contrast, private parties
litigate in order to further their own interests which, sometimes,
may be contrary to the interests of the general public. Indeed, in
this case, it is difficult to see what interest the public has in
permitting the plaintiffs another bite of the apple in challenging
regulations limiting the emission of greenhouse gases into the
atmosphere.

Furthermore, the Restatement section and the cases cited by
the plaintiffs are readily distinguishable because they cite the
perceived public interest in permitting an issue to be relitigated
as a factor that may make issue preclusion inappropriate only where
the question presented is a purely legal one. Thus, the
Restatement, itself, provides that issue preclusion should not be
applied if "the issue is one of law and treating it as conclusively
determined would inappropriately foreclose [the] opportunity for
obtaining reconsideration of the legal rule on which it was based"
Restatement (Second) of Judgments § 29(7) (emphasis added).
Similarly, in Pharm. Care Mgmt. Ass'n, 522 F.3d at 446, the court
stated that issue preclusion is inappropriate where "the issue is
one of law and the facts of the cases are substantially unrelated"
and that "collateral estoppel does not apply with the same force to

16

<u>unmixed questions of law</u>" because foreclosing "reconsideration of the <u>legal</u> issues would not aid judicial economy." <u>Id.</u> at 446-447 (emphases added). <u>Chicago Truck Drivers</u>, a case cited in <u>Pharm. Care</u>, also dealt with what the Court described as "a pure question of law" and that Court, too, stated that "an issue is not precluded if it is 'one of <u>law</u> and treating it as conclusively determined would inappropriately foreclose opportunities for obtaining reconsideration of the legal rule upon which it is based.'" <u>Chicago Truck Drivers, Helpers and Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.</u> 125 F.3d 526, 531 (7th Cir. 1997)(citing Restatement (Second) of Judgments § 29(7),emphasis added).

In addition, this case deals with the <u>defensive</u> use of issue preclusion by a defendant who seeks to bar a plaintiff from relitigating an issue that was decided in a previous case brought by the same plaintiff rather than the <u>offensive</u> use of issue preclusion referred to in <u>Acevedo-Garcia</u>.  In <u>Ackerman v. American Airlines</u>,the Court recognized that distinction in barring airline pilots from suing American Airlines with respect to an issue decided in previous suits brought by the pilots against other airlines and the Court found the cases relied upon by the pilots to be inapposite because they dealt with offensive issue preclusion. 924 F.Supp. 749 (N.D. Tex. 1995)

There are sound policy reasons for applying nonmutual issue

preclusion more readily when it is invoked defensively against a party that previously initiated litigation raising the same issue. While there may be circumstances under which it might be unfair to preclude a defendant from relitigating issues decided against it in a previous case brought at a time and place not of the defendant's choosing and in which the defendant was an involuntary participant, there is no comparable unfairness in precluding a plaintiff from relitigating issues that the plaintiff chose to raise in a previous case that it initiated in a forum that it selected.

Moreover, allowing a plaintiff to bring successive lawsuits seeking to relitigate issues that the plaintiff chose to raise in previous cases would create an exception that virtually swallows the rule and would result in the kinds of costly and vexatious multiple lawsuits, the waste of judicial resources and the risk of inconsistent decisions that issue preclusion is designed to prevent. Indeed, as plaintiffs' counsel candidly acknowledged during oral argument, such an exception would allow these plaintiffs to bring similar suits in every circuit.

## III. The CAA Preemption Issue

The relevant portion of the CAA provides as follows:

"Section 7543. State Standards

(a) Prohibition

No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines

subject to this part. . .

(b) Waiver

(1) The Administrator shall. . .  waive application of this section to any State which has adopted standards. . .  at least as protective of public health and welfare as applicable Federal standards. . . ."

The plaintiffs argue that neither the Vermont court nor the California court decided whether adoption of the CARB standards violates the CAA, but both the Vermont and California courts specifically rejected the contention that the CAA preempts "adoption" as well as enforcement of the CARB standards.   The California Court found that "[a]lthough section [7543] may prohibit a state from adopting or attempting to enforce 'any standard relating to the control of emissions from new motor vehicles,' that prohibition simply does not apply where California adopts regulations under the terms and conditions specified by section [7543]." Central Valley, 2008 WL 2600786 at *3 (E.D. Cal. Jun. 24, 2008) (Emphasis in original). The Vermont court also concluded that waiver is a precondition to enforcement, not adoption.   Green Mountain, 508 F. Supp. 2d at 343 n. 50.

Furthermore, both the Vermont and California courts determined that the "adoption" issue was rendered moot by the fact that the regulations at issue in those cases could not be enforced.   Since the defendants concede that Regulation 37 cannot be enforced unless a CAA waiver is obtained for the CARB Regulation, there has been no change in circumstances; and, therefore, those determinations are

19

binding on the plaintiffs in this case.

The plaintiffs also argue that the California and Vermont decisions do not bar their CAA claim because those decisions are inconsistent with each other with respect to the CAA preemption issue. See Restatement (Second) of Judgments § 29(4), cmt. f., (in considering whether a party should be precluded from relitigating a previously determined issue, the court should consider whether the "determination relied on as preclusive is itself inconsistent with another adjudication of the same issue."). However, there is nothing inconsistent about the two decisions. After noting the parties' agreement "that the Clean Air Act prevents the _enforcement_ of California's proposed regulations absent a waiver of preemption by EPA," Central Valley, 2007 WL 135688 at *6 (emphasis added), the California Court enjoined enforcement of the CARB regulation unless and until a waiver was granted and the Court dismissed "any further action with respect to the Clean Air Act as moot." Id. at *7. The Vermont Court also noted that the "parties agree that _enforcement_ of Vermont's GHG standards is preempted by Section [7543] of the Clean Air Act," and held that the plaintiffs' "CAA counts are therefore moot." Green Mountain, 508 F.Supp.2d at 343 n.50. (Emphasis added).

IV. Who is Precluded

The plaintiff manufacturers and associations clearly are precluded from relitigating the EPCA and CAA preemption issues

because they were parties to both the California and Vermont cases. The only remaining question is whether the plaintiff dealers also are precluded.

In general, "one is not bound by a judgment _in personam_ in a litigation in which he is not designated as a party."[4] Taylor v. Sturgell, -- U.S. --, 128 S.Ct. 2161, 2166-67, 171 L.Ed. 155 (2008) (quoting Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940)).  However, issue preclusion may be invoked against those who were not parties to the previous litigation with respect to "matters that they had a full and fair opportunity to litigate." Montana, 440 U.S. at 153-154, 99 S.Ct. at 973-974.  Thus, "'one who prosecutes or defends a suit in the name of another to establish and protect his own right, or assists in the prosecution or defense of an action in aid of some interest of his own. . . is as much bound . . . as he would be if he had been a party to the [previous action].'" Id. at 154, 99 S.Ct. at 974; Gonzales v. Banco Cent. Corp., 27 F.3d 751, 756-57 (1st Cir. 1994).

The Supreme Court has rejected any "virtual representation" exception to the general rule against applying issue preclusion to those who were not parties to the previous litigation to the extent that such an exception would utilize a "multifactor test"

---

[4]Unlike nonmutual preclusion, nonparty preclusion occurs when a judgment in a prior action is invoked against one who was not a party to that action.  NLRB v. Donna-Lee Sportswear Co., Inc., 836 F.2d 31, 35 n.4 (1st Cir. 1987).

"present[ing] preclusion in cases that do not fit within any of the established exceptions." <u>Taylor</u>, 128 S.Ct. at 2173. <u>Taylor</u> identified six categories of established exceptions[5] that it described as "meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy." <u>Id</u>. at n.6.

In this case, the defendants argue that the dealers are precluded from litigating the EPCA and CAA preemption issues because they are in "privity" with the manufacturers and because the manufacturers and associations "virtually" or "adequately" represented them in the previous cases. In support of their

---

[5]The categories of circumstances under which issue preclusion may be applied against a nonparty can be summarized as follows:

1.   Where the party agreed to be bound by the determination in the previous case.

2.   Where there was a "'preexisting substantive legal relationship' between the person to be bound and a party to the judgment."

3.   Where the non-party was "'adequately represented by someone with the same interests who [wa]s a party'" to the previous litigation.

4.   Where the nonparty "'assume[d] control' over the litigation in which the judgment was rendered."

5.   Where the nonparty is merely a "proxy" for a party to the previous litigation.

6.   Where "a special statutory scheme may 'expressly foreclos[e] successive litigation by non-litigants.'"

<u>Taylor</u>, 128 S.Ct. at 2172 - 2173.

argument, the defendants point to the franchisee-franchisor relationship between the dealers and the manufacturers and they contend that the dealers' interests are derivative of the manufacturers' interests.

As already noted, <u>Taylor</u> rejected "virtual representation" as a basis for nonparty issue preclusion, at least to the extent that it does "not fit within any of the established exceptions." <u>Id.</u> at 2173. <u>Taylor</u> also discouraged citing "privity" as a basis for applying nonparty issue preclusion because that term, sometimes, is used too "broadly as a way to express the conclusion that nonparty preclusion is appropriate on any ground." <u>Id.</u> at n.8.[6]

Based on the current state of the record, the only categories of nonparty preclusion recognized in <u>Taylor</u> that, arguably, are applicable to the dealers in this case are: (1) that the franchise relationship between the manufacturers and dealers is the type of "substantive legal relationship" that bars the dealers from relitigating the issues; (2) that, in the previous litigation, the dealers were "adequately represented" by the manufacturers and associations; and/or (3) that, in this case, the dealers are acting as "proxies" for the manufacturers and associations. The

---

[6]Privity has been described as an "elusive concept" that is difficult to define, <u>In re Iannochino</u>, 242 F.3d 36, 46 (1st Cir. 2001), and as being "conclusory and analytically unsound," <u>Montana</u>, 440 U.S. at 154 n.5, 99 S.Ct. at 974 n. 5. <u>See also</u>, <u>Gonzales</u>, 27 F.3d at 757 (cautioning that courts should "tread gingerly" in using privity as a basis for applying claim preclusion to nonparties).

defendants bear the burden of establishing that one or more of those exceptions applies. See e.g., Gonzalez, 27 F.3d at 759, and, in the instant case, they have failed to carry that burden.

The defendants have not presented any evidence regarding the terms of any franchise relationship between the Rhode Island dealers and the plaintiff manufacturers that would support a finding of the type of "substantive legal relationship" justifying the application of nonparty issue preclusion. The defendants' reliance on the Ninth Circuit's unpublished decision in Lanphere Enter., Inc. v. Doorknob Enter., 145 Fed. Appx. 589 (9th Cir. 2005) is misplaced because, there, evidence was presented regarding the nature of the franchise relationship and the court's finding of "privity" was based, not only, on the franchise relationship, but also, on an indemnity agreement between the franchisor and franchisees. Lanphere, 145 Fed. Appx. at 592.

Moreover, there is nothing that indicates even the existence of a franchise relationship between the plaintiff Tasca Automotive Group, Inc. and any of the plaintiff manufacturers. The complaint alleges that Tasca sells vehicles manufactured by Ford, Lincoln, and Mercury, but those manufacturers were not parties to either of the previous cases. The defendants argue that Tasca, nevertheless, should be precluded because Ford is a member of the plaintiff Alliance of Automobile Manufacturers (AAM), but the precise nature of that alleged relationship, too, is unknown and it posits an even more attenuated relationship between Tasca and the AAM than the

franchise relationship between the other dealers and the manufacturers.

There is a similar lack of evidence to support any finding that the dealers should be bound by the judgments in the previous cases because they were "adequately represented" by the manufacturers and associations. <u>Taylor</u> described "adequate representation" as follows:

> [A] party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. Adequate representation may also require (3) notice of the original suit to the persons alleged to have been represented." <u>Taylor</u>, 128 at 2176 (Citations omitted).

The <u>Taylor</u> Court referred to "class actions. . . and suits brought by trustees, guardians and other fiduciaries" as examples of the kinds of cases satisfying the second requirement. <u>Id.</u> at 2172-73.

Here, there is nothing in the record indicating any understanding that the manufacturers and associations were acting as representatives of the Rhode Island dealers in the previous cases or, even, that the Rhode Island dealers were aware of the previous cases. The mere fact that the dealers and manufacturers may have shared a common interest in the outcome of the previous cases, by itself, is insufficient to establish that the manufacturers and associations were acting as the dealers' representatives in those cases. <u>General Foods Corp. v. Mass. Dept.</u>

of Public Health, 648 F.2d 784, 789 (1st Cir. 1981)(the mere fact that there was an identity of interest between a party and a nonparty does not bind the nonparty to a judgment); Petit v. City of Chicago, 766 F. Supp. 607, 612 (N.D. Ill. 1991)("[I]dentity of interests alone. . . is not sufficient to yield a finding of privity between the parties.")

Finally, as presently constituted, the record does not provide a sufficient basis for finding that, in this case, the dealers are acting as proxies or agents of the manufacturers and associations. The Supreme Court has cautioned that "courts should be cautious about finding preclusion on this basis." Taylor, 128 S.Ct. at 2179.

The fact that, in this case, the Rhode Island dealers are represented by the same counsel that represent the manufacturers and associations and that represented them in the previous cases fuels suspicions that they may be acting in concert or that the dealers are not real parties in interest to this case. However, in the words of Taylor, "a mere whiff of 'tactical maneuvering' will not suffice" and "preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication." Id. 128 S.Ct. at 2179. Here, no such showing has yet been made.

The defendants assert that the dealers' claims are merely "derivative" of the manufacturers' claims but they do not explain what that means or why it would trigger the application of nonparty

issue preclusion.   If the defendants intend that assertion as an argument that the dealers have no independently cognizable claims, it would be inappropriate for the Court to address that argument, at this time, because it has not been directly raised or adequately briefed.

### Conclusion

For all of the foregoing reasons, the defendants' motion to dismiss C.A. No. 06-69 is GRANTED and the motion to dismiss C.A. No. 06-70 is GRANTED with respect to the AAM and the plaintiff manufacturers and it is DENIED with respect to the plaintiff dealers.

IT IS SO ORDERED:

Ernest C. Torres
Ernest C. Torres
Senior United States District Judge

Date: November 24, 2008

27